[No. E025276. Fourth Dist., Div. Two. Feb. 29, 2000.]

THE PEOPLE, Plaintiff and Respondent, v.
RICKY MENDOZA, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part I.

**COUNSEL**

Phillip I. Bronson, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, John T. Swan and Robert B. Shaw, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**McKINSTER, Acting P. J.**—After a jury trial, defendant Ricky Mendoza was convicted of one count of first degree murder (Pen. Code,[1] § 187). The jury also made a true finding on the allegation that defendant had used a deadly weapon in the commission of the murder. Defendant also admitted five prior convictions. Pursuant to section 667, subdivisions (b) through (i) (hereafter, the three strikes law), defendant was sentenced to a one-year determinate term to be followed by an indeterminate term of 75 years to life in prison.

On appeal, defendant contends that the trial court erred in instructing the jury with CALJIC No. 2.71.5. He also contends that his counsel at trial (hereafter, the trial counsel) was ineffective because he failed to object to impeachment of defendant with multiple prior convictions and actually brought those convictions out voluntarily during direct examination of defendant. Finally, defendant argues that his indeterminate sentence of 75 years to life was improperly calculated.

In the published portion of the opinion, we conclude that the trial counsel was not ineffective in voluntarily bringing out defendant's prior convictions on direct examination. We also conclude that the trial court did not err in calculating defendant's sentence under the three strikes law by tripling the minimum parole eligibility date of 25 years. In the unpublished portion of the opinion, we find that the trial court did not prejudicially err in instructing the jury with CALJIC No. 2.71.5.

### STATEMENT OF FACTS

On June 30, 1995, Fabricio Gonzalez and Armando Hernandez went to a McDonald's in the City of Covina. There, they met an individual named Pelon, who was a member of the Mexican Mafia. Pelon ordered Gonzalez and Hernandez to kill 19-year-old Rudy Bernal (hereafter, the victim). Later that day, Hernandez and Lafayette Lett drove to the house of Jose Oliveras, where they were joined by defendant. Gonzalez and the victim were also there. Defendant asked Oliveras for a wire and, eventually, found the wire in the Oliveras's backyard.

---

[1] Unless otherwise stated, all further statutory references are to the Penal Code.

Thereafter, the group got into Hernandez's 1986 Cadillac and went to Victorville in order "to take care of" some African-American individuals harassing Hernandez's sister. Hernandez was driving and the victim sat next to him in the front seat, while defendant, Gonzalez, and Lett sat in the backseat. When the group reached an isolated area of Hesperia, it exited the Interstate 15 freeway onto a dark and unpaved road. When the car stopped, defendant put on a pair of white gloves and gave similar gloves to Gonzalez and Lett. Then, defendant looped a wire around the victim's neck and strangled him. After the victim was dead, his body was moved a short distance and left in an empty field. Defendant threw the wire and the gloves out of the car window.

DISCUSSION

I*

*CALJIC No. 2.71.5*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

II

*Ineffective Assistance of Counsel*

Defendant took the stand in his own defense. On direct examination, defendant admitted that he had convictions in 1978 and 1979 for multiple counts of armed robbery (in which a firearm was used), a commercial burglary conviction suffered while he was on parole for the armed robbery convictions, and a grand theft auto conviction in 1993 or 1994 suffered while defendant was on parole for the commercial burglary conviction.

After defendant finished his direct testimony, the trial court noted that the prosecution was going to impeach his credibility with prior convictions. The trial counsel responded that he informed defendant of the likelihood of being impeached with the priors. The trial counsel also stated that since defendant was going to be impeached with the priors, he had made a tactical decision to bring the priors before the jury on direct examination.

On cross-examination, defendant admitted that he was convicted of (1) six counts of robbery and armed robbery in 1979, (2) second degree burglary in 1989, (3) vehicle theft in 1991, and (4) second degree burglary in 1993.

■ On appeal, defendant contends that the trial counsel was ineffective because he did not attempt to exclude the priors and, instead, put the priors

*See footnote, *ante*, page 918.

at issue during defendant's direct examination. Defendant argues that since most (if not all) of the priors would have been excluded under Evidence Code section 352, the trial counsel's decision to put defendant's prior criminal record at issue could not be explained as a reasonable tactical choice. Not so.

" 'Under both the Sixth Amendment to the United States Constitution and article I, section 15, of the California Constitution, a criminal defendant has the right to the assistance of counsel. [Citations.] The ultimate purpose of this right is to protect the defendant's fundamental right to a trial that is both fair in its conduct and reliable in its result. [Citations.]' . . . [¶] ' "Construed in light of its purpose, the right entitles the defendant not to some bare assistance but rather to *effective* assistance." ' [Citations.] . . . ' "In order to demonstrate ineffective assistance of counsel, a defendant must first show counsel's performance was 'deficient' because his 'representation fell below an objective standard of reasonableness . . . under prevailing professional norms.' [Citations.] Second, he must also show prejudice flowing from counsel's performance or lack thereof. [Citation.] Prejudice is shown where there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " ' [Citation.] [¶] 'Reviewing courts defer to counsel's reasonable tactical decisions in examining a claim of ineffective assistance of counsel [citation], and there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." [Citation.] Defendant's burden is difficult to carry on direct appeal, . . . " 'Reviewing courts will reverse convictions [on direct appeal] on the ground of inadequate counsel *only if the record on appeal affirmatively discloses that counsel had no rational tactical purpose for [his or her] act or omission.'* " [Citations.]' " (*People v. Sanchez* (1997) 58 Cal.App.4th 1435, 1447-1448 [69 Cal.Rptr.2d 16], italics in original.)

It is well settled that counsel is not ineffective in failing to make an objection when the objection would have likely been overruled by the trial court. (See, e.g., *People v. Osband* (1996) 13 Cal.4th 622, 678 [55 Cal.Rptr.2d 26, 919 P.2d 640] [counsel not ineffective in failing to make a futile objection to introduction into evidence a photograph of the crime scene]; *People v. Sanchez, supra,* 58 Cal.App.4th at p. 1450 [counsel not ineffective in failing to object to introduction of the gang evidence likely to be admissible in any event].)

Turning to the facts of this case, we need to consider whether defendant's prior convictions would have been admissible over the trial

counsel's objection. █ "Sections 788 and 352 of the Evidence Code control the admission of felony convictions for impeachment. Together, they provide discretion to the trial judge to exclude evidence of prior felony convictions when their probative value on credibility is outweighed by the risk of undue prejudice. [Citation.]" (*People v. Muldrow* (1988) 202 Cal.App.3d 636, 644 [248 Cal.Rptr. 891], fn. omitted.) In exercising its discretion, the trial court must consider four factors identified by our Supreme Court in *People v. Beagle* (1972) 6 Cal.3d 441, 453 [99 Cal.Rptr. 313, 492 P.2d 1] (hereafter, *Beagle*): (1) whether the prior conviction reflects adversely on an individual's honesty or veracity; (2) the nearness or remoteness in time of a prior conviction; (3) whether the prior conviction is for the same or substantially similar conduct to the charged offense; and (4) what the effect will be if the defendant does not testify out of fear of being prejudiced because of the impeachment by prior convictions. (*People v. Muldrow*, *supra*, 202 Cal.App.3d at p. 644.) These factors need not be rigidly followed. (*Ibid.*)

## A. *Probative Value*

█ Turning to the facts of this case, the first factor to be considered is whether the prior convictions reflect adversely on defendant's individual honesty or veracity. It is undisputed that defendant suffered prior convictions for robbery, burglary, and vehicle theft. California courts have repeatedly held that prior convictions for burglary, robbery, and other various theft-related crimes are probative on the issue of the defendant's credibility. (See, e.g., *People v. Muldrow*, *supra*, 202 Cal.App.3d at p. 645 [burglary and attempted burglary]; *People v. Hunt* (1985) 169 Cal.App.3d 668, 674 [215 Cal.Rptr. 429] [vehicle theft and burglary]; *People v. Zataray* (1985) 173 Cal.App.3d 390 [219 Cal.Rptr. 33] [car theft]; *People v. Rodriguez* (1986) 177 Cal.App.3d 174, 178 [222 Cal.Rptr. 809] [robbery]; *People v. Brown* (1985) 169 Cal.App.3d 800, 805-806 [215 Cal.Rptr. 494] [robbery].) Thus, defendant's convictions were clearly probative on the issue of his credibility and this factor would not favor the exclusion of the priors. This is particularly true in light of the fact that defendant's line of defense at trial was an outright denial of guilt, i.e., his credibility was directly at issue.

## B. *Remoteness of the Priors*

With respect to the remoteness factor, defendant's 1978-79 and 1989 convictions could be characterized as remote, which would generally lessen their probative value. █ However, convictions remote in time are not automatically inadmissible for impeachment purposes. Even a fairly remote prior conviction is admissible if the defendant has not led a legally blameless

life since the time of the remote prior. (*People v. Boyd* (1985) 167 Cal.App.3d 36, 44 [212 Cal.Rptr. 873]; *People v. Kemper* (1981) 125 Cal.App.3d 451, 454-455 [178 Cal.Rptr. 156].) In fact, in *People v. Green* (1995) 34 Cal.App.4th 165, 183 [40 Cal.Rptr.2d 239], the court admitted a 20-year-old prior conviction, reasoning that defendant's 1973 conviction was followed by five additional convictions in 1978, 1985, 1987, 1988, and 1989. The court reasoned that "the systematic occurrence of [appellant's] priors over a 20-year period create[d] a pattern that [was] relevant to [his] credibility." (*Ibid.*, citing *People v. Muldrow, supra,* 202 Cal.App.3d at p. 648.) The fact that the intervening convictions were in and of themselves probative on the issue of defendant's honesty and credibility mitigates in favor of admission of the remote prior. (*People v. Muldrow, supra,* 202 Cal.App.3d at p. 648, citing *People v. Newton* (1980) 107 Cal.App.3d 568, 576 [166 Cal.Rptr. 60].)

 In this case, defendant has not led a legally blameless life since 1979, as he had suffered multiple convictions in 1989, 1991, and in 1993. This is so despite the apparent 10-year gap between defendant's 1979 and 1989 convictions. By defendant's own admission, he served a six- or seven-year state prison term on the 1979 conviction and was on parole for that offense when he committed the 1989 burglary. Moreover, defendant's subsequent convictions in 1989, 1991, and 1993 were for theft-related crimes, which are in and of themselves probative on the issue of defendant's credibility. Thus, the remoteness factor would not mitigate against admission of the priors.

## C. *Similarity of the Priors to the Current Offense*

 "Prior convictions for the identical offense are not automatically excluded. 'The identity or similarity of current and impeaching offenses is just one factor to be considered by the trial court in exercising its discretion.' " (*People v. Green, supra,* 34 Cal.App.4th at p. 183, citing *People v. Castro* (1986) 186 Cal.App.3d 1211, 1216 [231 Cal.Rptr. 269].)

 Here, defendant's prior convictions were not similar to the current gang-related first degree murder charge. Although the record does not contain any details of defendant's prior convictions, there is absolutely no evidence that any of the priors were gang-related. Accordingly, this factor would not favor the exclusion of the priors.

## D. *Adverse Impact on Defendant's Right to Testify*

With respect to the last *Beagle* factor, it has no application in this case because defendant actually took the stand and suffered impeachment with the priors.

Defendant also argues that if the objection was made, at least some of the priors would have been excluded due to their exceptionally high number (10). However, there is no limitation on the number of prior convictions with which the defendant's credibility can be impeached. (*People v. Muldrow, supra*, 202 Cal.App.3d at p. 646, citing *People v. Dillingham* (1986) 186 Cal.App.3d 688, 695 [231 Cal.Rptr. 20] and *People v. Castro, supra*, 186 Cal.App.3d at p. 1211.) Whether or not one or more prior convictions can be admitted is merely one of the factors that must be weighed against the danger of prejudice. (*People v. Muldrow, supra*, 202 Cal.App.3d at p. 646.) For example, in *People v. Green*, the court allowed the defendant to be impeached with six convictions. (*People v. Green, supra*, 34 Cal.App.4th at p. 183.)

In this case, the number of defendant's priors (10) is certainly high, which would generally favor the exclusion of at least some of the priors. However, none of these priors are identical or similar to the current offense of first degree murder. Furthermore, impeachment of defendant with only one or two priors would have given him a "false aura of veracity" because it would suggest that defendant has led a generally legally blameless life, whereas he had not been able to remain crime-free for any significant period of time between 1979 and 1999. (*People v. Muldrow, supra*, 202 Cal.App.3d at pp. 646-647.) Thus, this factor would favor the admission of the priors.

The cases relied on by defendant are distinguishable. In *People v. Perez* (1978) 83 Cal.App.3d 718 [148 Cal.Rptr. 90], the prior in question was for possession of heroin, an offense which, in the court's view, had no probative value on the defendant's credibility, and (2) was similar to the offense for which the defendant was being tried. (*Id.* at p. 733.) As we have already stated in subparts A and C, the priors in this case had high probative value on the issue of credibility and were not similar to the current charge.

In *People v. Zimmerman* (1980) 102 Cal.App.3d 647 [161 Cal.Rptr. 669, 14 A.L.R.4th 214], the defendant's counsel failed to follow an established court-approved procedure to minimize the damaging effect of the prior. (*Id.* at p. 657.) While the counsel's adherence to an established procedure to minimize the effect of the priors would have likely entitled the defendant in *Zimmerman* to relief, none of the pertinent factors in this case favored the exclusion of the prior. Thus, the success of the trial counsel's motion to exclude the priors would have been extremely unlikely.

Balancing the *Beagle* factors, we conclude that the strong probative value of the priors outweighs their prejudicial effect and that the trial court would have likely overruled the trial counsel's objection under Evidence Code

section 352. Accordingly, the trial counsel's decision to voluntarily bring the priors out before the jury can be fairly characterized as a reasonable tactical choice designed to demonstrate defendant's candor and honesty to the jury. In fact, the trial counsel stated on the record that he chose to bring the priors out on direct as a trial tactic. Therefore, the trial counsel was not ineffective in not making an obviously futile motion.

## III

### *Sentencing*

Defendant was sentenced under the three strikes law. The total indeterminate term was 75 years to life in prison. The trial court arrived at that term by tripling the minimum amount to be served on defendant's murder conviction, which is 25 years, as provided in section 667, subdivision (e)(2)(A), part of the three strikes law.

The three strikes law provides, in pertinent part: "For purposes of subdivisions (b) to (i), inclusive, and in addition to any other enhancement or punishment provisions which may apply, the following shall apply where a defendant has a prior felony conviction: [¶] . . . [¶] (2)(A) If a defendant has two or more prior felony convictions as defined in subdivision (d) that have been pled and proved, the term for the current felony conviction shall be an indeterminate term of life imprisonment with a minimum term of the indeterminate sentence calculated as the greater of: [¶] (i) Three times the term otherwise provided as punishment for each current felony conviction subsequent to the two or more prior felony convictions. [¶] (ii) Imprisonment in the state prison for 25 years. [¶] (iii) The term determined by the court pursuant to Section 1170 for the underlying conviction, including any enhancement applicable under Chapter 4.5 (commencing with Section 1170) of Title 7 of Part 2, or any period prescribed by Section 190 or 3046." (§ 667, subd. (e)(2)(A).)[4]

On appeal, defendant argues that option (i) does not apply to the crimes for which the punishment otherwise prescribed by law is an indeterminate term. Defendant points out that the word "term" is used in option (iii) to refer to determinate sentences imposed pursuant to section 1170, while the word "period" is used to refer to indeterminate sentences imposed under sections 190 or 3046. Since option (i) uses the word "term" but does not use the word "period," defendant contends that option (i) applies only to determinate sentences and is not available in cases where the otherwise provided punishment is an indeterminate term.

---

[4]For the sake of clarity, we will refer to each sentencing option under section 667, subdivision (e)(2)(A) only by its number, i.e., i, ii, iii.

The People respond that since section 667, subdivision (e)(2)(A) requires the trial court to impose the greatest term yielded by one of the three options and in the case of a first degree murder the greatest sentence is yielded by using option (i), option (i) should be utilized. The People also point out that defendant's interpretation of the statute would lead to an absurd result because the three strikes law expressly permits the minimum parole eligibility date in an indeterminate term of a second strike to be doubled. The People note that under defendant's interpretation of the statute, a second strike criminal defendant convicted of first degree murder would be punished more severely than a third strike criminal defendant convicted of the same offense.

■ It is a fundamental rule of statutory construction that " ' "[the] meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. [Citation.] Literal construction should not prevail if it is contrary to the legislative intent apparent in the [statute]." ' [Citation.] 'The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act. [Citations.] An interpretation that renders related provisions nugatory must be avoided [citation]; . . .' [Citation.]" (*People v. Ramirez* (1995) 33 Cal.App.4th 559, 563 [39 Cal.Rptr.2d 374].) In interpreting a statute, the courts must construe the statute to promote its purpose, render it reasonable, and avoid absurd consequences. (*Conservatorship of Bryant* (1996) 45 Cal.App.4th 117, 120 [52 Cal.Rptr.2d 755].)

■ We are not persuaded by defendant's argument that the use of the word "period" in option (iii) in describing the punishment under section 190 indicates the intent of the Legislature to use only that word in describing indeterminate sentences. Indeed, the word "term" used in option (i) is also used in several other provisions of the statute to refer to both determinate and indeterminate terms. (See, e.g., § 667, subd. (e)(1) & (2)(A).) Recently, the California Supreme Court held that subdivision (e)(1), which uses the word "term," permits the trial court to sentence second strike criminal defendants, whose punishment would otherwise be an indeterminate term, by doubling their minimum parole eligibility date. (*People v. Jefferson* (1999) 21 Cal.4th 86, 90, 102 [86 Cal.Rptr.2d 893, 980 P.2d 441] [second strike criminal defendant convicted of attempted premeditated murder, for which the punishment would otherwise be an indeterminate term of 15 years to life in prison, can be sentenced under subd. (e)(1) by doubling the minimum parole eligibility date of 15 years].) Since subdivision (e)(1) is worded almost identically to subdivision (e)(2)(A) and deals with the same subject matter, the rules of statutory construction require us to interpret both subdivisions in a similar manner. (*People v. Ramirez, supra,* 33 Cal.App.4th at p. 563.)

Moreover, defendant's interpretation of the statute would lead to an absurd result. As noted above, a second strike defendant, whose punishment would otherwise be an indeterminate term, can be sentenced by doubling his or her minimum parole eligibility date. (*People v. Jefferson, supra,* 21 Cal.4th at p. 102.) Consequently, if we were to accept defendant's interpretation of the statute, a second strike criminal defendant convicted of first degree murder could be sentenced to an indeterminate term of 50 years to life in prison, while a third strike defendant convicted of the same offense could be sentenced to a term of no more than 25 years to life in prison. Such result would violate the cardinal principle of law requiring more culpable criminal defendants to be punished more severely.

Accordingly, the trial court did not err in sentencing defendant under the three strikes law by tripling his minimum parole eligibility date of 25 years.

### DISPOSITION

The judgment is affirmed.

Ward, J., and Gaut, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 14, 2000.