94 Cal.Rptr.2d 326 (2000)
79 Cal.App.4th 771
The PEOPLE, Plaintiff and Respondent,
v.
David Lewis CORNELIUS, Defendant and Appellant.
No. D027176.
Court of Appeal, Fourth District, Division One.
April 4, 2000.
Review Granted July 26, 2000.
Martin Nebrida Buchanan, under appointment by the Court of Appeal, San Diego, for Defendant and Appellant.
Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Adrianne S. Denault and David Delgado-Rucci, Deputy Attorneys General, for Plaintiff and Respondent.
Certified for Partial Publication.[1]
HUFFMAN, J.
On February 3, 1998, we determined in this case that an indeterminate life term imposed under the "one strike" law (Pen. Code,[2] § 667.61) for a current offense is a "term otherwise provided as punishment" for purposes of determining the minimum term for the indeterminate life term required under the "three strikes" law when a defendant has been found to have suffered two or more qualifying felony convictions.[3] (§§ 667, subds. (b)-(i), 1170.12.) We therefore concluded the trial court properly tripled the "25-year-to-life" term it imposed for David Lewis Cornelius's principal current forcible sex crime under the one strike law. Cornelius petitioned for review. The Supreme Court granted the petition on May 13, 1998 (S068743), and on November 10, 1999, transferred the matter to us with directions to vacate our decision and to reconsider the cause in light of People v. Jefferson (1999) 21 Cal.4th 86, 86 *327 Cal.Rptr.2d 893, 980 P.2d 441 (Jefferson). Having done so,[4] we again conclude the trial court properly tripled under the three strikes law Cornelius's 25-year-to-life term imposed under the one strike law.

PREFACE
A jury found Cornelius guilty of kidnapping for sexual purposes (§§ 207, 208, subd. (d)), forcible sodomy (§ 286, subd. (c)), forcible oral copulation (§ 288a, subd. (c)), and five counts of forcible rape (§ 261, subd. (a)(2)). The jury also found true the enhancement allegation with each of the forcible sex offenses that Cornelius kidnapped the victim in a manner which substantially increased the risk of harm to the victim within the meaning of section 667.61, subdivisions (a), (c) and (d).[5] After a bifurcated trial on the priors, the court found that Cornelius had suffered one prior serious felony conviction (§ 667, subd. (a)(1)), two qualifying three strikes priors (§§ 667, subds.(b)-(i), 1170.12)[6] and had served a prior prison term (§ 667.5, subd. (b)).
The court sentenced Cornelius to a total prison term of 230 years to life, consisting of 75 years to life for the count 2 rape (25 years to life under § 667.61, subd. (a), tripled under § 667, subd. (e)(2)(A)(i)),[7] 6 full strength consecutive indeterminate terms of 25 years to life for the remaining forcible sex offenses, and 5 years for the prior serious felony enhancement. The court stayed execution of sentence for the kidnapping count and struck the prison prior.
Cornelius appeals, contending the trial court committed reversible sentencing errors. As we explain below, we affirm as modified.

BACKGROUND[8]
The evidence at trial revealed that shortly after 9:15 p.m. on March 6, 1996, Cornelius abducted 23-year-old Mellanie J. from the grounds of the Midcity Continuing Education Center in San Diego. During the course of the next hour, Cornelius walked Mellanie several blocks to an apartment, grabbed her when she attempted to run away, ran after her and grabbed her by the neck when she did get away to seek help from the occupants of a passing car, followed her into an apartment complex *328 when she again broke away, where he grabbed her, threw her to the ground, and subjected her to numerous sexual degradations.
In an alcove of the apartment complex's courtyard, Cornelius raped Mellanie five times, sodomized her and required her to orally copulate him. The residents who observed the acts, and called the police, described Mellanie as crying and making hand signals during the succession of sexual acts. The police officer who responded to the call found Mellanie laying on the ground completely nude with her knees up and her right hand sticking straight up as if trying to compensate for pain while Cornelius was on top of her having sexual intercourse. The officer had to order Cornelius to stop and get off of Mellanie.
Cornelius's defenses at trial were that Mellanie consented, and that he did not have the intent to commit the kidnap and sexual acts against her will due to his impairment caused by a stipulated blood alcohol level of .22 and the presence of cocaine in his blood. The jury determined otherwise.
At sentencing, the trial court read and considered the probation officer's report, the statements in mitigation and aggravation, the letters in support of probation for Cornelius, as well as photographs, other materials and a psychological report, hearing comments from Cornelius and his sister, and the argument of counsel. The court first determined a lengthy life sentence would not constitute cruel and unusual punishment. The court found that the sentence which was in effect "a life without parole" would not be cruel and unusual in this case. In reaching that conclusion, the trial judge relied on Cornelius's past criminal record, his failure to address a known drug problem and the fact this was the "worst rape [the judge had] ever seen in all [her] career."
As for the actual sentence, the court found Cornelius ineligible for probation under the three strikes law and meticulously set out the applicable sections and the court's reasoning for the number of years to be imposed. The court first looked at section 667.61, subdivisions (a), (c) and (d), which it found required an indeterminate term of 25 years to life for any of the 7 current forcible sex offenses because of the special kidnap allegation that was pled and proven here.[9] The court then looked to subdivision (g) of section 667.61, which triggered an analysis of how many occasions, single or separate, were involved in this case for sentencing purposes.[10] The court noted that to determine the number of occasions it must "consider whether, between the commission of one sex crime and another, [Cornelius] had a reasonable opportunity to reflect upon his actions and nevertheless resumed sexually assaultive behavior." The court explained that it had gone back to the six-page transcript of Mellanie's testimony, had gone through it "step by step" and *329 "determined that each of these counts, two through eight, are indeed separate occasions." The judge further explained:
"I believe that each separate count and sex act was separated by a stopping period. There was either a change of the defendant's position and then resuming, by smoking a crack pipe and resuming, by forcing the victim to remove more clothing and then resuming, or by walking away and returning after being seen by a nearby resident. Each act was distinct, gave opportunity for reflection and [cessation] of the criminal activity, and seriously compounded the degradation of the victim, her fear, and her psychological injuries, if not her physical [injuries]. [¶] This was an extremely lengthy rape, sodomy, oral copulation event.... [¶] Each of the atrocious acts committed was distinct and nonincidental to the commission of the other sexual assaults. It was of some note to me that [Cornelius], before he even began this assault, told the victim very clearly what he was going to do and mentioned that there was going to be at least three separate events. So he was thinking that through, and he was discussing it. And he actually changed the positions, changed her positions, and went through each time this change of opportunity, and then added two events to what he had said at the beginning. [¶] I am going to incorporate this transcript into the sentencing today so that it's clear that I find that these are separate, and it's not going to be beyond dispute what I'm seeing. This is what I'm seeing. This was the transcript portion of it."
The court found the sequence and manner of events in this case analogous to those in People v. Harrison (1989) 48 Cal.3d 321, 256 Cal.Rptr. 401, 768 P.2d 1078 and People v. Plaza (1995) 41 Cal. App.4th 377, 48 Cal.Rptr.2d 710 where separate occasions were found with regard to one victim. The court found section 667.61, subdivision (g) did not limit the sentence to only one 25-year-to-life term, leaving open the question of consecutive sentences for the multiple imposition of 25-year-to-life terms for each separate count. The court thus exercised its discretion to sentence consecutively for each count under section 667.6, subdivision (d).
Because it had been found true that Cornelius had two strike priors, the court also determined it must apply the three strikes law in addition to applying section 667.61. And, finally, it determined, as it had with regard to section 667.6, subdivision (d), that the three strikes law also requires consecutive sentences in this case.
The court imposed sentence, stating:
"The bottom line then becomes as follows: On Count One, the kidnap charge, this has to be stayed under [section] 654 because this is the same as the allegations under [section] 667.61, the enhancement allegations, which raise the other crimes. So it has to be stayed. And this I believe is 25 to life under three strikes. [¶] So Count One ... is 25 to life under three strikes, stayed under Penal Code section 654. [¶] Count Two, which I designate as the principal term, is 75 [years] to life. And I count that as the one imposition under [section] 667.61, and that's 25 [years] to life, times three, which is the 75 [years] to life under three strikes. [¶] Counts Three, Four, Five, Six, Seven and Eight, are each 25 [years] to life under three strikes, consecutive to each other and to Count Two. To those I have to add five years under [section] 667[, subdivision] (a)(1). That's the five years serious felony prior. So the total term is 230 years to life."

DISCUSSION

I

A Section 667.61, Subdivision (a) Indeterminate Life Term Is a "Term Otherwise Provided as Punishment" for Purposes of Tripling under the Three Strikes Law
On appeal, Cornelius first contended the trial court erred when it imposed a principal *330 term of 75 years to life for his count 2 forcible rape conviction by improperly tripling pursuant to the three strikes law the chosen term of 25 years to life under the one strike law (§ 667.61, subd. (a)). In making such claim, Cornelius did not assert that the three strikes law does not apply in this case nor challenge the propriety of the court setting his punishment under the one strike law as "imprisonment in the state prison for life and ... not [ ] eligible for release on parole for 25 years...." (§ 667.61, subd. (a).) Rather, relying on the reasoning of People v. Jefferson (1996) 50 Cal.App.4th 958, 58 Cal.Rptr.2d 252 which was granted review February 19, 1997, (S057834), he claimed that the indeterminate term imposed under the one strike law can only be sentenced under section 667, subdivision (e)(2)(A)(ii) of the three strikes law because that "term" is in actuality "a straight life sentence," which merely sets a minimum parole eligibility release date, and is not a definitive "term" for the purposes of tripling under section 667, subdivision (e)(2)(A)(i). He thus asserted the only reasonable construction of section 667.61 is that the Legislature intended that section to provide for a straight life sentence with a minimum parole eligibility date of 15 or 25 years and that the plain language of the three strikes law precludes the tripling of such an indeterminate life sentence. We disagreed.
In doing so, we first noted that the court in People v. Ervin (1996) 50 Cal.App.4th 259, 57 Cal.Rptr.2d 728 (disapproved on other grounds in People v. Fuhrman (1997) 16 Cal.4th 930, 947, fn. 11, 67 Cal. Rptr.2d 1, 941 P.2d 1189), had examined the interplay between section 667.61, subdivision (b) and the three strikes law with regard to a defendant with one qualifying prior and had held both statutes were to be given effect. (People v. Ervin, supra, at pp. 263-266, 57 Cal.Rptr.2d 728.) We agreed with the reasoning in Ervin that the one strike law and the three strikes law are not inconsistent and thus can be applied cumulatively. Additionally, we saw no reason the same rationale would not permit the two laws to apply cumulatively where, as here, the defendant has two or more qualifying strike priors (three strikes).[11] While Cornelius appeared to agree with this conclusion by conceding both laws applied in his case, he disagreed with the court's conclusion in Ervin that the section 667.61 "term" imposed may then be doubled under the three strikes law, or tripled in his case.
We next noted it was difficult to address many of Cornelius's arguments because they stemmed from the faulty premise that the sentence imposed under section 667.61, subdivision (a) is a straight life term. While admitting the pertinent language of section 667.61, subdivision (a), which states imprisonment shall be "in the state prison for life and [the defendant] shall not be eligible for release on parole for 25 years" (§ 667.61, subd. (a)), is slightly different than that used to define the terms imposed under other statutes which provide for punishment in prison for 15, 20 or 25 years to life (e.g., §§ 190, subd. (a), 667.51, subd. (d), 667.71, subd. (b)), we concluded such difference in this case was without distinction.
Reading subdivision (a) of section 667.61, which specifically includes the provision that the defendant "shall not be eligible for release on parole for 25 years except as provided in subdivision (j)[,]" together with subdivision (j)[12] of that section, we found it *331 evident that the only reasonable construction of the plain language of section 667.61 is that the Legislature intended subdivision (a) to provide for an indeterminate sentence of 25 years to life. That being so, it necessarily followed that the "minimum term" for such sentence would be 25 years and that such reduced by allowable credits, defined the "minimum parole eligibility release date" or the minimum period of imprisonment which a defendant must serve before being entitled to release from prison. (See § 190, subd. (a); see also People v. Jenkins (1995) 10 Cal.4th 234, 243-244, 247, 40 Cal.Rptr.2d 903, 893 P.2d 1224.) We thus found that Cornelius's various attempts to characterize the "term" imposed under section 667.61, subdivision (a) as a straight life term without a "minimum term" failed.
We additionally found Cornelius's assertion the language of the three strikes law does not permit the tripling of an indeterminate life sentence with "a minimum parole eligibility release period" to be merely another way of advancing his above strained interpretations. We believed it made no difference in this case whether the "term" defined by section 667.61, subdivision (a) is a "minimum term" or a "minimum parole eligibility release period" because either described a set period of confinement or punishment which is then used to determine the minimum term for the indeterminate life term if required under the three strikes law.
After reviewing section 667, subdivision (e)(2)(A)(i)-(iii),[13] the applicable portions of the three strikes law under which Cornelius fell and was sentenced, we noted that case law has established, subdivision (e)(2)(A) of section 667 provides the sentencing court with three alternatives or formulas "designed solely to calculate the minimum, term, of an indeterminate life sentence" for certain qualifying recidivist defendants. (People v. Anderson (1995) 35 Cal.App.4th 587, 596, 41 Cal.Rptr.2d 474, original italics.) In making its determination, the court must select the greatest of the three alternatives for the minimum term, "which then acts merely as a gauge of parole eligibility. [Citation.]" (Ibid.) Although alternative (ii) of this subdivision will generally provide the greatest minimum term, alternative (i) will do so whenever the "`term otherwise provided as punishment' exceeds eight years." (People v. Cartwright (1995) 39 Cal.App.4th, 1123, 1143, 46 Cal.Rptr.2d 351.)[14] "The Legislature clearly intended [alternative (i)] to be [a] viable, independent alternative[.]" (People v. Anderson, supra, 35 Cal. *332 App.4th at p. 596, 41 Cal.Rptr.2d 474; see also People v. Dotson (1997) 16 Cal.4th 547, 552-553, 66 Cal.Rptr.2d 423, 941 P.2d 56.)
We further noted that although the minimum term calculation under alternative (i) has been described as "three times the term otherwise provided by law, i.e., triple the base term" (People v. Anderson, supra, 35 Cal.App.4th at p. 595, 41 Cal. Rptr.2d 474), we had found nothing in the language of the three strikes law that defined or limited the phrase "term otherwise provided as punishment" for the purposes of tripling under that alternative. Nor had we found any language in the three strikes law which would preclude consideration of a current sentence as a "term otherwise provided as punishment" that is an indeterminate term in and of itself, with either a "minimum term" or only "a minimum parole eligibility release period."
Because the purpose of the three strikes law was "to ensure longer prison sentences and greater punishment for those who commit a felony and have been previously convicted of serious and/or violent felony offenses [(§ 667, subd. (b))]," we determined any interpretation of the phrase "term otherwise provided as punishment" must necessarily be inclusive rather than exclusive and to interpret such phrase narrowly to exclude Cornelius's term imposed under section 667.61, subdivision (a), would defeat the law's very purpose and lead to absurd results by rewarding rather than penalizing a recidivist criminal like Cornelius "because his latest offense is sufficiently heinous to bring him within the provisions of section 667.61." (People v. Ervin, supra, 50 Cal.App.4th at p. 264, 57 Cal.Rptr.2d 728.)
We therefore broadly construed the phrase "term otherwise provided as punishment" in section 667, subdivision (e)(2)(A)(i) to mean that sentence or period of confinement a defendant is required to serve before being entitled to release from prison regardless of whether it was a determinate or indeterminate term where a set minimum time was imposed by statute or the sentencing court as a "gauge of parole eligibility. [Citation.]" (People v. Anderson, supra, 35 Cal.App.4th at p. 596, 41 Cal.Rptr.2d 474.) We found such interpretation comported with the intent of the Legislature in enacting the three strikes law to ensure the imposition of longer prison sentences for certain qualified repeat offenders.
As noted above, the Supreme Court granted Cornelius's petition for review and transferred the matter to us to reconsider the cause in light of its determination in Jefferson, supra, 21 Cal.4th 86, 86 Cal. Rptr.2d 893, 980 P.2d 441, which that court decided after sentencing and the initial direct appeal in this case. In Jefferson, the Supreme Court made clear that when a second strike defendant is sentenced under section 667, subdivision (e)(1) for a crime that is punishable by a life sentence without an express minimum term, the sentencing court doubles the stated statutory minimum period for parole eligibility for punishment of that crime, or if none is indicated, doubles the seven-year period specified by section 3046. (Jefferson, supra, 21 Cal.4th at pp. 96-101, 86 Cal. Rptr.2d 893, 980 P.2d 441.)
In his supplemental briefing, Cornelius relies on the portion of the court's opinion in Jefferson, supra, where it replies to the dissent's query of how it is possible to double the period set forth in section 3046 for a defendant with one strike but not to do so for defendants who have two or more strikes,[15] to posit "Jefferson makes it clear *333 that the Three Strikes law may not be used to triple the parole ineligibility period prescribed by the One Strike law." He thus claims his indeterminate term imposed under the one strike law can only be sentenced under alternative (ii) of section 667, subdivision (e)(2)(A). After carefully reviewing Jefferson in light of its possible application to third strike sentences for a defendant also sentenced under the one strike law, we disagree.
Several points in Jefferson's analysis of indeterminate term sentences are instructive. After reviewing the old and current sentencing schemes, the court in Jefferson noted that "term" is presently defined as the actual time a person will serve in prison before being released on parole and that "[a] statute requiring a prisoner to serve a specified term of incarceration before being released on parole is a provision requiring service of a `minimum term' within the sentence-doubling language of section 667[, subdivision] (e)(1)." (Jefferson, supra, 21 Cal.4th at pp. 95-96, 86 Cal.Rptr.2d 893, 980 P.2d 441.) The court also recognized that under section 3046, the minimum term for an indeterminate sentence is "seven calendar years or ... a term as established pursuant to any other section of law that establishes a minimum period of confinement under a life sentence before eligibility for parole, whichever is greater." (Jefferson, supra, at p. 99, 86 Cal.Rptr.2d 893, 980 P.2d 441). In Jefferson, that "`other section of law' that established] a `minimum period of confinement' for [the] defendant's life sentence [was] section 186.22 [subdivision] (b)(4), which pertains to criminal street gangs, and establishes a minimum confinement period of 15 years.[16] (Jefferson, supra, at p. 99, 86 Cal.Rptr.2d 893, 980 P.2d 441.)
In this case, the minimum term provided for by that "other section of law" is subdivision (a) of section 667.61, which specifically provides that the defendant "shall not be eligible for release on parole for 25 years...." Under the reasoning of Jefferson, it necessarily follows that the "minimum term" for Cornelius's one strike sentence in this case is thus 25 years. This term or set period of confinement or punishment is then used to determine under section 667, subdivision (e)(2)(A) the penalty for a third strike defendant. As noted earlier, such provides that the sentence for such defendant is "an indeterminate term of life imprisonment with a minimum term of the indeterminate sentence calculated at the greater of: [¶] (i) Three times the term otherwise provided as punishment for each current felony conviction ...; [¶] (ii) Imprisonment in the state prison for 25 years[; or] [¶] (iii) The term determined by the court pursuant to Section 1170 for the underlying conviction, including any enhancements] ... or any period prescribed by Section 190 or 3046." (§ 667, subd. (e)(2)(A).) Because Jefferson essentially tells us the "term otherwise provided as punishment" is the time a defendant will serve in prison (Jefferson, supra, 21 Cal.4th at pp. 96, 101, 86 Cal.Rptr.2d 893, 980 P.2d 441), which as noted above is 25 years to life in this case, such is the "term" that is tripled for alternative (i) of section 667, subdivision (e)(2)(A).
*334 Here, the sentencing court did just that. It imposed the 25-year-to-life term for the count 2 base (principal) term under the one strike law and then used that term to apply the alternative that would produce the "greater" minimum term under the three strikes law. That the Legislature intended this increased sentence is evidenced by its express language that "in addition to any other enhancement or punishment provisions which may apply," the greater of the calculated "terms" under alternatives (i) through (iii) of subdivision (e)(2)(A) of section 667 will determine the minimum term of the indeterminate sentence to be imposed. Such lengthy sentence comports with the intent of the three strikes law "to ensure longer prison sentences and greater punishment for those who commit a felony and have been previously convicted of serious and/or violent felony offenses." (§ 667, subd. (b).) Moreover, such sentence is consistent with the reasoning in Jefferson, supra, that the minimum term or "alternate penalty" for a statutory provision found true, such as section 186.22, subdivision (b)(4), or in this case section 667.61, subdivision (a), is the punishment for "the underlying felony itself and is thus subject to the applicable equations in calculating the proper "minimum term for the indeterminate term" under the three strikes law. (Jefferson, supra, 21 Cal.4th at p. 101, 86 Cal.Rptr.2d 893, 980 P.2d 441.)
Further, the court in Jefferson stressed it was only deciding "whether the Legislature intended the phrase `minimum term for an indeterminate term' in section 667[, subdivision] (e)(1) as a convenient way to describe not only indeterminate sentences that expressly include a minimum term, such as the 25-year-to-life sentence for first degree murder, but also sentences for which section 3046 establishes the minimum period of imprisonment." (Jefferson, supra, 21 Cal.4th at p. 98, 86 Cal.Rptr.2d 893, 980 P.2d 441.) The court found "the mere mention of section 3046" in section 667, subdivision (e)(2)(A) and its absence in the second strike situation shed "little light on [such] question." (Jefferson, supra, at p. 98, 86 Cal.Rptr.2d 893, 980 P.2d 441.) It also believed the reference to section 3046 "merely demonstrate] the Legislature's intent to clarify the scope of section 667[, subdivision] (e)(2)(A)(iii), and not ... a legislative belief that section 3046 does not define a `term.'" (Jefferson, supra, at p. 99, 86 Cal.Rptr.2d 893, 980 P.2d 441.)
However, because the issue before the court in Jefferson concerned a two strike offender, it did not decide what effect reference to section 3046 or section 190 in alternative (iii) of section 667, subdivision (e)(2)(A) and its absence from the other sentencing alternatives in that subdivision may have in computing the proper sentence in a third strike offender's case. Although it recognized section 3046 would only come into play for a third strike offender in "a very limited number of cases," it did not reach any issue regarding actual sentencing under section 667, subdivision (e)(2)(A).[17](Jefferson, supra, 21 Cal.4th at p. 99, 86 Cal.Rptr.2d 893, 980 P.2d 441.) As such, contrary to Cornelius's position, we believe the court's comments in answering questions regarding section 3046 in alternative (iii) of section 667 subdivision *335 (e)(2)(A) were unnecessary to its actual holding and do not bind us to a particular conclusion on the matter.
Although the dicta in Jefferson on which Cornelius relies is subject to interpretation (see fn. 15, ante, at p. 332), we believe that in light of the legislative history of the three strikes law such remarks logically refer to the fact the 7-year parole eligibility period of section 3046 will usually not be a factor in the calculation of a third strike sentence since tripling such period will result in a minimum term of 21 years, which will always be exceeded by the 25-year-to-life minimum provided by option (ii) of section 667, subdivision (e)(2)(A).[18] If one reads the dicta in Jefferson as Cornelius proposes, i.e., that a sentencing judge can only impose a sentence under alternative (ii) of section 667, subdivision (e)(2)(A) in cases involving a life sentence with a minimum period of confinement before eligibility for parole, absurd results follow. For example, under his interpretation a second strike offender who also falls under the one strike law would receive a harsher sentence than third strike offenders who did so; i.e., the second strike defendant would receive either a life sentence with a minimum term of 30 or 50 years, while a third strike defendant would only receive 25 years to life regardless of the applicable subdivision of the one strike law. "It is unlikely that the Legislature, when it enacted the Three Strikes law, or the voters, when they passed the Three Strikes initiative, intended such an anomalous result." (Jefferson, supra, 21 Cal.4th at p. 97, 86 Cal.Rptr.2d 893, 980 P.2d 441.)[19]
We therefore conclude, consistent with the reasoning in Jefferson, the trial court properly used alternative (i) of section 667, subdivision (e)(2)(A) to triple Cornelius' 25-year-to-life "term otherwise provided as punishment" under the one strike law for purposes of imposing a 75-year-to-life minimum term for his count 2 indeterminate three strike sentence.

II[*]

DISPOSITION
The convictions and true findings are affirmed. The trial court is directed to prepare an amended abstract of judgment to reflect count 2 as the principal term which is tripled under the three strikes law and to send the corrected abstract to the Department of Corrections. As so modified, the judgment is affirmed.
WORK, Acting P.J., and McINTYRE, J., concur.
NOTES
[1] Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part II.
[2] All statutory references are to the Penal Code.
[3] Our opinion was published in People v. Cornelius (1998) 61 Cal.App.4th 221, 71 Cal. Rptr.2d 392.
[4] We also considered supplemental letter briefs on the issue presented by the transfer.
[5] On January 1, 1998, subdivision (d) was deleted from section 208 and the offense was added to section 209, subdivision (b). (Stats. 1997, ch. 817, §§ 1 & 2.) Although section 208 was also deleted from section 667.61, subdivision (e) (Stats. 1997, ch. 817, § 6), because Cornelius was convicted of section 207 in addition to section 208, subdivision (d), and the jury specifically found true the allegations under section 667.61, subdivision (d)(2), the recent legislative changes have no effect on the applicability of the one strike law to his case.
[6] Section 667, subdivisions (b) through (i) was enacted as emergency legislation on March 7, 1994. (Stats.1994, ch. 12.) Section 1170.12 was enacted November 9, 1994, after the voters approved Proposition 184. (Cal. Const., art. II, § 10, subd. (a).) The two enactments commonly referred to as the three strikes law contain almost identical provisions. Because Cornelius was charged with crimes occurring after section 1170.12 was added to the Penal Code, that section rather than section 667, subdivisions (b) through (i) technically controls his case. Because many of the cases discussing the provisions of the three strikes law refer to section 667, subdivisions (b) through (i), our discussion of the three strikes law will generally refer to that section unless there is a relevant difference between the two versions. Our initial review of the two statutory schemes, however, has revealed no variations regarding the provision at issue here.
[7] Because the abstract of judgment incorrectly shows count 3 as the principal term which is tripled, the abstract of judgment must be amended to reflect the sentence actually imposed.
[8] Because Cornelius does not challenge the sufficiency of the evidence to support his convictions, the enhancement allegations or the true findings on his priors, we merely set forth an overview of the case as a backdrop for the sentencing facts relevant to our discussion.
[9] Section 667.61 provides in relevant part: "(a) A person who is convicted of an offense specified in subdivision (c) under one or more of the circumstances specified in subdivision (d) ... shall be punished by imprisonment in the state prison for life and shall not be eligible for release on parole for 25 years .... [¶] ... [¶] (c) This section shall apply to any of the following offenses: [¶] (1) A violation of paragraph (2) of subdivision (a) of Section 261. [¶] ... [¶] (6) Sodomy or oral copulation in violation of Section 286 or 288a by force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person. [¶] ... [¶] (d) The following circumstances shall apply to the offenses specified in subdivision (c): [¶] ... [¶] (2) The defendant kidnapped the victim of the present offense and the movement of the victim substantially increased the risk of harm to the victim over and above that level of risk necessarily inherent in the underlying offense in subdivision (c)."
[10] Subdivision (g) of section 667.61 provides in pertinent part that "[t]he term specified in subdivision (a) ... shall be imposed on the defendant once for any offense or offenses committed against a single victim during a single occasion.... Terms for other offenses committed during a single occasion shall be imposed as authorized under any other law, including Section 667.6, if applicable."
[11] We found further support for this conclusion in People v. Alvarez (1996) 14 Cal.4th 155, 58 Cal.Rptr.2d 385, 926 P.2d 365 where our Supreme Court held the three strikes law is not exclusive, but rather applies "`in addition to any other [enhancement or] punishment provisions which may apply' [citations]...." (Id. at p. 247, 58 Cal.Rptr.2d 385, 926 P.2d 365, fn. omitted, original italics.)
[12] "Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3 shall apply to reduce the minimum term of 25 years in the state prison imposed pursuant to subdivision (a).... However, in no case shall the minimum term of 25 ... years be reduced by more than 15 percent for credits granted pursuant to Section 2933, 4019, or any other law providing for conduct credit reduction. In no case shall any person who is punished under this section be released on parole prior to serving at least 85 percent of the minimum term of 25 ... years in the state prison." (Italics added.)
[13] The pertinent portion of section 667 provided that: "(e) ... [I]n addition to any other enhancement or punishment provisions which may apply, the following shall apply ...: [¶] ... [¶] (2)(A) If a defendant has two or more prior felony convictions as defined in subdivision (d) that have been pled and proved, the term for the current felony conviction shall be an indeterminate term of life imprisonment with a minimum term of the indeterminate sentence calculated as the greater of: [¶] (i) Three times the term otherwise provided as punishment for each current felony conviction subsequent to the two or more prior felony convictions. [¶] (ii) Imprisonment in the state prison for 25 years. [¶] (iii) The term determined by the court pursuant to Section 1170 for the underlying conviction, including any enhancement applicable under Chapter 4.5 (commencing with Section 1170) of Title 7 of Part 2, or any period prescribed by Section 190 or 3046." (§ 667, subd. (e)(2)(A)(i)-(iii), italics added.)

We respectively refer to each of the formulas of subdivision (e)(2)(A) of section 667 as alternative (i), alternative (ii) and alternative (iii). Section 1170.12, subdivision (c)(2)(A), provides the same three alternatives as section 667, subdivision (e)(2)(A) for calculating the minimum term.
[14] The court in Cartwright identified several specific offenses, including murder (§ 190), for which the punishment would be more than eight years. (People v. Cartwright, supra, 39 Cal.App.4th at p. 1143, 46 Cal.Rptr.2d 351.)
[15] The majority in Jefferson answered several comments by the dissent regarding its holdings, as follows: "The dissent further contends: `[W]hen the drafters did make use of section 3046 [in section 667[ subdivision] (e)(2)(A)], they did not require the court to multiply the seven-year period of parole eligibility set out therein. For the rare third strike case not covered by another provision of the Three Strikes law, the drafters apparently were satisfied to rely on the Board of Prison Terms to decide when, if ever, after the period set out in section 3046, such an offender would be released on parole.' [Citation.] The dissent asks, `How can we justify doubling the period set out in section 3046 for a second strike defendant when the drafters left the same period unmultiplied for a third strike defendant?' [Citation.] We see no inconsistency between the Legislature's decision to double the parole ineligibility period set by section 3046 for `second strike' offenders and its decision not to multiply that period for third strike offenders. As to third strike offenders, section 3046 comes into play only in a very limited number of cases: those in which the minimum term of confinement is (1) more than three times the term provided as punishment of the current conviction and is (2) more than twenty-five years. The Legislature may have seen no need to multiply these extremely long sentences, notwithstanding its conclusion that the shorter parole ineligibility period in section 3046 should be multiplied for second strike offenders." (Jefferson, supra, 21 Cal.4th at p. 99, 86 Cal. Rptr.2d 893, 980 P.2d 441, original italics.)
[16] Our earlier opinion in this case was consistent with this reasoning and these conclusions.
[17] The court's dicta in Jefferson appears to refer only to the seven year shorter parole period in section 3046 and the rare incidents when alternative (iii) of subdivision (e)(2)(A) would come into play using such period. We can envision such a situation occurring when a defendant with a current conviction for attempted premeditated murder and 2 prior strikes has at least 14 prior serious felony convictions within the meaning of section 667, subdivision (a)(1). Under such circumstances, the defendant would have a minimum term of 77 years under the calculations of alternative (iii), which would provide the "greater" minimum term for purposes of the three strikes law. Similarly, a one strike defendant like Cornelius with 2 strike priors who also hypothetically had 14 separately brought and tried prior serious felony convictions would have a minimum term of 100 years under alternative (iii) which would provide the "greater" minimum term. In either situation, tripling of the section 3046 term under alternative (i) as the dicta in Jefferson suggests would be unnecessary because alternative (iii) would have provided the longest possible term consistent with the intent behind the enactment of the three strikes law.
[18] On March 8, 2000, Division Seven of the Second District Court of Appeal issued its decision in People v. Dozier (2000) 78 Cal. App.4th 1195, 93 Cal.Rptr.2d 600, holding, in light of Jefferson, that the imposition of a sentence of 21 years to life for the straight life sentence with possibility of parole imposed for the premeditated attempted murder conviction in that case was "wrong because the minimum term of the indeterminate life sentence imposed on a third strike defendant can never be less than 25 years. (§ 667, subd. (e)(2)(A)(i), (ii), (hi).)" (People v. Dozier, supra, at 1201-1202, 93 Cal.Rptr.2d 600.) Although Dozier is not yet final, we agree with this result. We disagree, however, with the court's reasoning in Dozier that alternative (i) of subdivision (e)(2)(A) of section 667 is never a viable alternative for a third strike defendant whose present term of confinement, as in this case, is not a straight life term, but rather an indeterminate sentence with a minimum term of more than nine years before parole eligibility.
[19] We are also aware Division Two of this Fourth Appellate District has recently held in People v. Mendoza (2000) 78 Cal.App.4th 918, 928-930, 93 Cal.Rptr.2d 216 that a third strike defendant can be sentenced by tripling the minimum parole eligibility date for his indeterminate life term. The court in Mendoza found it would lead to an absurd result to hold otherwise in light of the almost identical wording of subdivision (e)(1) and (e)(2)(A) of section 667 and the reasoning in Jefferson. (78 Cal.App.4th at p. 930, 93 Cal.Rptr.2d 216.) Although Mendoza is not yet final, we agree with its rationale and conclusion.
[*] See footnote 1, ante.