Filed 5/12/23  P. v. Cortez CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>VANESSA CORTEZ,<br><br>    Defendant and Appellant. | 2d Crim. No. B319506<br>(Super. Ct. No. 2021002150)<br>(Ventura County) |

Vanessa Cortez appeals a judgment following her conviction of second degree robbery after a jury trial.  (Pen. Code, § 211.[1])  The trial court suspended imposition of sentence and placed her on formal probation for 36 months.  She subsequently was found in violation of her probation conditions and sentenced to state prison.  We conclude, among other things, that 1) the trial court did not err by admitting evidence of Cortez's prior misdemeanor convictions for theft and giving false identifying

---

[1] All statutory references are to the Penal Code unless otherwise stated.

information to a police officer as impeachment evidence; and 2) Cortez has not shown that the court committed reversible error by admitting evidence of her prior misdemeanor battery conviction.  We affirm.

FACTS

On Christmas Eve, Mohsen Ali was the manager of the General Needs Company store.  He testified that the store had a pink toy car for sale.  Christina Davalos and Cortez entered the store together.  Davalos wanted to buy the toy car with a 50 percent discount and pay $199.  But the sale price for the car was $399.

Ali was willing to give Davalos a 5 percent discount.  Davalos placed between $220 and $240 cash on the counter and took the car without "permission."  She left the store.  Ali went outside to try "to bring the car back."  He and Davalos both held onto the car.  Ali told her to bring it back and he would not call the police.  Cortez "pushed" him away, and Davalos left with the car.

After Davalos and Cortez left the store, they put the toy car on "top" of a pickup truck.  They were accompanied by two men and they left.

Ali called the police.  Officer Ramzi Raad arrived and viewed a surveillance video of the incident.  He recognized Cortez and Davalos.  He knew that they frequently visit a "transient encampment."  When he arrived there, he saw Cortez with the toy car and arrested her for robbery.

While in custody, Raad interviewed Cortez after advising her of her *Miranda* rights.  He showed her the surveillance video.  Raad testified Cortez admitted "to using force to take that property."  In the transcript of the police interview, Cortez was

asked, "And you used your body to push [Ali] off of it – away from it." Cortez: "Yes. 'Cause I just told you that right now."

At trial Cortez testified she was a heroin addict, was "kicking," not feeling well, and was not paying attention to what Ali and Davalos were saying. She believed Davalos had paid Ali for the toy car. She was surprised when Ali suddenly "darted past" her and "grabbed the car." Cortez testified she "stepped into their little scuffle that they had at the door" and did not believe Davalos "was doing illegal."

On cross-examination, Cortez said she knew there was "disagreement about the price [of the car]." She knew the money Davalos left at the counter was "$260 less than what the store owner wanted for that car." She knows that when someone leaves cash, but only pays "half of the cost," that this is "theft." She admitted that she and Davalos started "to pull" the car away from Ali. She said she "stepped into him" and "[she] did get in the middle of it."

*Admission of Cortez's Prior Convictions*

In a pretrial proceeding, the trial court allowed the prosecutor to introduce evidence of Cortez's three most recent prior misdemeanor convictions. After Cortez and a defense witness testified that Cortez was not violent, the court also granted the People's request to introduce Cortez's prior battery conviction as rebuttal evidence.

DISCUSSION

*Evidence of the Three Misdemeanor Convictions*

In response to a defense motion in limine, the trial court ruled Cortez's three most recent convictions for petty theft with priors (§ 666) in 2010 and 2102, and her misdemeanor conviction for providing false identifying information to a police officer

3

(§ 148.9) in 2015, could be used to impeach Cortez's testimony because those offenses "qualify as moral turpitude crimes." Cortez contends this was error. We disagree.

We review a trial court's rulings on the admissibility of evidence for abuse of discretion. (*People v. Harris* (2005) 37 Cal.4th 310, 337.) "Past criminal conduct involving moral turpitude that has some logical bearing on the veracity of a witness in a criminal proceeding is admissible to impeach" a witness. (*Ibid*.) Moral turpitude crimes are offenses "in which dishonesty is an element." (*People v. Chavez* (2000) 84 Cal.App.4th 25, 28.) "[T]heft crimes necessarily involve an element of deceit." (*People v. Gurule* (2002) 28 Cal.4th 557, 608.) Consequently, they involve moral turpitude. (*People v. Gray* (2007) 158 Cal.App.4th 635, 641.) The crime of providing false information to a police officer necessarily involves dishonesty and, therefore, moral turpitude. (*People v. Maestas* (2005) 132 Cal.App.4th 1552, 1556, fn. 4.)

Here Cortez testified at trial for the purpose of showing she did not commit the charged offense. The trial court properly admitted this evidence because the "defendant's line of defense at trial was an outright denial of guilt" and therefore the defendant's "credibility was directly at issue." (*People v. Mendoza* (2000) 78 Cal.App.4th 918, 925.)

Cortez contends the trial court erred because the 2010 and 2012 prior convictions were too remote in time to be admissible. But courts have held trial courts have properly admitted prior convictions for impeachment that were in the age range of Cortez's priors. (*People v. Carter* (2014) 227 Cal.App.4th 322, 330 [11-year-old prior convictions were properly admitted].) Moreover, here the trial court, aware of the remoteness issue,

4

exercised its discretion to only admit the three most recent convictions.

Cortez claims the admission of this evidence was unduly prejudicial. She contends the prosecutor used these prior convictions: 1) to bolster a weak case, and 2) to convince jurors to use these prior convictions instead of considering the evidence on the charged offense. She notes the prosecutor told jurors, "[Y]ou need to evaluate who to believe in this case. Do you believe her? Convicted of petty theft with priors in 2010 for the same charge in 2012."

But the prior convictions were properly admitted for impeachment purposes and a prosecutor has a right to make a "fair" comment on the evidence. (*People v. Young* (2005) 34 Cal.4th 1149, 1191.) Credibility is necessarily involved where the defendant testifies with the goal of defeating the People's case. (*People v. Mendoza*, *supra*, 78 Cal.App.4th at p. 925.) The prosecutor may cite to admitted evidence and ask jurors to draw different inferences than the defense draws. (*Young*, at p. 1191.)

To make sure the jury would not be distracted, the trial court instructed jurors that the evidence of "prior convictions" "may be considered by [the jurors] solely for the purpose of assessing that witness's credibility, *and for no other purpose*." (Italics added.) We presume the jury followed those instructions and "that jurors treat the court's instructions as a statement of the law by a judge, and the prosecutor's comments as words spoken by an advocate in an attempt to persuade." (*People v. Clair* (1992) 2 Cal.4th 629, 663, fn. 8.)

Moreover, the People note that any error is harmless given the strength of the People's case. Robbery is the taking of property from the immediate possession of another person

accomplished by the use of force or fear. (*People v. Scott* (2009) 45 Cal.4th 743, 749.) "The crime of robbery includes the element of asportation, the robber's escape with the loot being considered as important in the commission of the crime as gaining possession of the property." (*People v. Estes* (1983) 147 Cal.App.3d 23, 27.) The People note Cortez admitted to police that she used force to prevent the store clerk from obtaining possession of the toy. She was asked, "And you used your body to push [Ali] off of it – away from it." Cortez: "Yes. 'Cause I just told you that right now." That was a highly incriminating admission. There was also a store surveillance video. Both the interview and the video were played for the jury. Cortez was asked in the police interview, "Why, why did you pull it? Why did you start pulling the car?" Cortez: "*Because* I . . . wanted [Ali] to call the police if there was a problem." (Italics added.) The prosecutor also successfully impeached the credibility of Cortez's direct testimony on cross-examination.

*The Prior Misdemeanor Battery Conviction*

Cortez contends the trial court erred by admitting her prior misdemeanor battery conviction because she "did not put her character for peacefulness at issue." (Initial capitalization omitted.)

Evidence Code section 1101, subdivision (a), provides, in relevant part, that "evidence of a person's character or a trait of his or her character . . . is inadmissible when offered to prove his or her conduct on a specified occasion."

But "evidence of the defendant's character or a trait of his character in the form of an opinion or evidence of his reputation *is not made inadmissible* by Section 1101 if such evidence is: [¶] (a) Offered by the defendant to prove his conduct in conformity

6

with such character or trait of character. [¶] (b) Offered *by the prosecution to rebut evidence adduced by the defendant under subdivision* (a)." (Evid. Code, § 1102, subds. (a) & (b), italics added.)

The People claim Cortez opened the door for rebuttal evidence of the battery conviction because evidence in the defense case involved her character trait of being nonviolent. Cortez's friend Alejandro Garcia testified about Cortez's character. He said, "I've never known her to be violent." He said she would not use physical force against someone. Cortez testified that during the incidents involving her prior petty theft convictions she was not violent.

"Under the doctrine of 'opening the door,' one party may render otherwise inadmissible evidence admissible by introducing the topic selectively such as to leave a misleading impression." (*People v. Kerley* (2018) 23 Cal.App.5th 513, 553.) "A trial court's ruling on whether rebuttal evidence is admissible on this theory is reviewed for abuse of discretion." (*Ibid.*) The court could reasonably find that defense case evidence presented the "impression" that Cortez would not be violent, consequently rebuttal evidence would be appropriate. (*Ibid.*)

Cortez claims the rebuttal evidence may not include her prior battery conviction. She notes in *People v. Mansfield* (1988) 200 Cal.App.3d 82, 88, the court said a battery conviction "need not be violent" and it does not involve moral turpitude. Under *Mansfield,* it was not the type of rebuttal evidence to show violence or moral turpitude. But see *People v. Williams* (1985) 169 Cal.App.3d 951, 957, where the court said, "[B]attery by a jail inmate upon a noninmate, a crime of violence, demonstrates 'a

7

general readiness to do evil,' and thus *moral turpitude*."  (Italics added.)

We have reviewed Cortez's remaining contentions and we conclude she has not shown grounds for reversal.

DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED.</u>

GILBERT, P. J.

We concur:

YEGAN, J.

BALTODANO, J.

David R. Worley, Judge

Superior Court County of Ventura

_____

Nancy Wechsler, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Kenneth C. Byrne and Allison H. Chung, Deputy Attorneys General, for Plaintiff and Respondent.