Filed 4/28/14  P. v. McDonald CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOHN BRIAN McDONALD,<br><br>    Defendant and Appellant. | A135715<br><br>(Contra Costa County<br>Super. Ct. No. 51105030) |

A jury convicted defendant John Brian McDonald of two counts of vehicular manslaughter and one count of leaving the scene of an injury accident.[1]  It also found true an enhancement that McDonald fled the scene, but it rejected an enhancement that McDonald inflicted great bodily injury.[2]  After denying McDonald probation, the trial court sentenced him to a total term of seven years imprisonment.  On appeal, McDonald argues that insufficient evidence supported his convictions, his trial counsel was ineffective, the jury was improperly instructed, the prosecutor engaged in misconduct during closing argument, his motion for new trial was improperly denied, and he was wrongly denied probation.  We disagree with these arguments and affirm.

---

[1] These counts were based on Penal Code section 192, subdivision (c)(1) and Vehicle Code section 20001, subdivision (a).

[2] The enhancement for fleeing the scene was based on Vehicle Code section 20001, subdivision (c), and the enhancement for inflicting great bodily injury was based on Penal Code section 12022.7, subdivision (a).  All further statutory references are to the Penal Code unless otherwise indicated.

1

# I.
## FACTUAL AND PROCEDURAL
### BACKGROUND

This case arose out of a deadly traffic accident that occurred when a car driven by Shanie Hansen crossed into an oncoming lane of traffic and crashed into a motorcycle, killing the motorcycle's driver and passenger and seriously injuring Hansen. The prosecution's case centered on the theory that McDonald, who was driving a truck while travelling in the same direction alongside Hansen, forced Hansen into oncoming traffic in an act of road rage and then fled the scene.

Although many of the facts about McDonald's involvement in the accident are disputed, some are not. It is undisputed that in the minutes leading up to the accident Hansen and McDonald were driving separate vehicles westbound on Vasco Road, which is a bypass for State Route 4 (the bypass). Hansen was driving a car, a Honda, and McDonald was driving a black truck while towing a boat. As she drove, Hansen was not using a seat belt, was not wearing shoes, and did not have her left foot on the floorboard.[3]

The portion of the westbound bypass relevant to this case alternates at different places between one or more lanes, often depending on the presence of a turn lane or a merge lane. At two places—immediately after it intersects with Balfour and Sand Creek Roads—the bypass narrows and two lanes merge into one. As McDonald and Hansen passed through each of these intersections, McDonald was driving in the lane nearest the center divide (lane one) and Hansen was driving one lane over (lane two). Although McDonald and Hansen disagreed about the details, they agreed that at both locations Hansen left the intersection in lane two and pulled in front of McDonald to merge into lane one as lane two was ending. Hansen's testimony about McDonald's behavior during and after these merges described road rage on the part of McDonald. McDonald's testimony about Hansen's behavior described irresponsible driving on the part of Hansen.

---

[3] McDonald testified that Hansen's left foot was hanging out the driver's-side window of the Honda, but Hansen testified that her left leg was bent at the knee and tucked up under her as she drove. Hansen denied that she had her left foot out the window.

The accident happened farther down the road, near the Lone Tree overpass, where the westbound bypass once again widened to two lanes. Immediately before the accident, Hansen was driving in lane one and McDonald pulled up alongside her in lane two. Hansen testified that McDonald forced her into the center divide, causing her to lose control and spin into the oncoming lane of traffic; McDonald admitted that he was driving alongside Hansen at the time, but he denied forcing Hansen into the center divide and suggested that the accident was caused by Hansen's poor driving. Although McDonald denied seeing the accident or knowing that anyone was injured, he admitted that he saw a dust cloud on the other side of the road from his side-view mirror, assumed that it was caused by the Honda, and did not stop. Many of the remaining details about these events are disputed, and we will discuss the relevant ones in addressing the specific arguments McDonald raises in this appeal.

The trial lasted over a two-week period in February and March 2012, and McDonald's appeal includes challenges based on four events that occurred during it. First, the prosecution's accident-reconstruction expert incorrectly testified that she had previously testified at McDonald's preliminary hearing. Second, a highway patrol officer incorrectly testified that Hansen identified McDonald as the driver of the truck from an array of photographs she was shown some time after the accident. Third, over McDonald's objections, the trial court instructed the jury about consciousness of guilt by a defendant who makes false statements. And fourth, in closing argument, the prosecutor commented on defense counsel's theories and arguments in ways that McDonald argues were inappropriately derogatory and misstated the law.

The jury found McDonald guilty of two counts of vehicular manslaughter and one count of leaving the scene of an injury accident. It also found true an enhancement that McDonald fled the scene of the accident, but it rejected an enhancement that McDonald inflicted great bodily injury.

After the trial, the trial court entered two additional rulings that are relevant to this appeal. First, the trial court denied a motion for a new trial in which McDonald argued that the prosecution improperly failed to disclose in advance of trial all statements by the

prosecution's expert.  Second, the trial court denied McDonald's request to be placed on probation instead of being incarcerated.

This timely appeal followed.

## II.
### DISCUSSION

### A.    *Sufficient Evidence Supports McDonald's Convictions.*

McDonald first argues that "there was insufficient reasonable and credible evidence of solid value to prove beyond a reasonable doubt that his driving caused Hansen to lose control of her car" or "to support [McDonald's] conviction for failure to stop at an injury accident."  We disagree.

To evaluate a claim of insufficient evidence, " 'we review the whole record to determine whether . . . [there is] substantial evidence to support the verdict . . . such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.]  In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence.' " (*People v. Manibusan* (2013) 58 Cal.4th 40, 87.)  Under this standard, we " ' ' " 'must review the whole record in the light most favorable to the judgment below to determine whether it discloses *substantial evidence*—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " ' " [Citation.]" (*People v. Gonzales and Soliz* (2011) 52 Cal.4th 254, 294.)  " 'Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence. [Citation.]' [Citation.]  We ' " 'presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' " [Citation.]' [Citation.]" (*People v. Clark* (2011) 52 Cal.4th 856, 943.)  " 'Although it is the jury's duty to acquit a defendant if it finds the circumstantial evidence susceptible of two reasonable interpretations, one of which suggests guilt and the other innocence, it is the jury, not the appellate court that must be convinced of the defendant's guilt beyond a reasonable doubt. [Citation.]' [Citation.]  Where the circumstances reasonably justify

4

the trier of fact's findings, a reviewing court's conclusion the circumstances might also reasonably be reconciled with a contrary finding does not warrant the judgment's reversal. [Citation.]" (*People v. Zamudio* (2008) 43 Cal.4th 327, 357-358.)

### 1. Substantial Evidence Supports McDonald's Convictions for Vehicular Manslaughter.

McDonald's convictions for vehicular manslaughter are supported by ample, and certainly substantial, evidence. The most direct evidence supporting the convictions was eyewitness testimony of at least two witnesses that McDonald forced Hansen into the oncoming lane of traffic near the Lone Tree overpass. Hansen testified that she was driving in lane one and that McDonald had been tailgating her and pulled up next to her in lane two. She thought that McDonald was going to pass her on the right, but instead he drove alongside her. She testified that McDonald started encroaching into her lane and squeezing her toward the center divide. In her words, McDonald started "drifting into [her] lane, slowly," and she was "inching out as he was inching in." She testified that McDonald continued encroaching until he was "at least 80 percent in [her] lane." She started to hit "these little cones in the middle of the road" and went "completely on the other side," and her car started to spin.

A witness who had been driving the vehicle immediately in front of Hansen, Jack Anderson, also provided eyewitness testimony. He agreed with Hansen's testimony that McDonald encroached into lane one and squeezed Hansen toward the center divide. In his words, as a result of the encroachment, Hansen did not have "room to continue traveling on the same direct course down [lane one]."

Since McDonald acknowledged that he knew that Hansen was driving next to him in lane one at the Lone Tree overpass, the eyewitness testimony of Hansen and Anderson constituted substantial evidence supporting the convictions for vehicular manslaughter. But additional evidence was presented upon which the jury also could have relied in rendering its verdict. First, the prosecution's expert witness testified that there was "no physical evidence to indicate that the Honda was actually going towards [lane two]" before it spun out of control. This evidence undercut McDonald's insinuation that

5

Hansen caused the accident herself by first turning toward his truck and then spinning out of control while correcting her steering. And a person who arrived on the scene immediately after the accident testified that she came upon Hansen who was crying and kept repeating "He ran me off the road. He ran me off the road. He ran me off the road."

The jury's verdict that McDonald had acted intentionally or with gross negligence was corroborated by the evidence that suggested he had been angry with, and aggressive toward, Hansen before the accident. Hansen testified that her first encounter with McDonald was immediately after the Balfour Road intersection. She was in lane two, which was ending, and trying to merge into lane one. The road was congested, traffic was slow, and McDonald was "right beside [her]" in lane one. She had her blinker on, but McDonald refused to let her "merge over," even when she slowed down or sped up. Eventually, McDonald slowed down, a large gap was created between his truck and the vehicle in front of him, and Hansen was forced to "accelerate and get in front of him" before her lane ended. Hansen testified that after this merge, McDonald was tailgating her and "flipping [her] off." According to Hansen, McDonald was so close to her that she could see only the truck's grill and lights in her rear-view mirror. The road again widened into two lanes, and Hansen moved into lane two. McDonald followed her into lane two and continued to tailgate her until they approached Sand Creek Road where McDonald moved back into lane one and drove up alongside Hansen.

Hansen testified that essentially the same thing that had happened at Balfour Road happened at Sand Creek Road. The lane she was in, lane two, was ending, and she again needed to merge into lane one. Once again, McDonald would not let her merge until she was forced to accelerate in front of him in order to successfully merge. McDonald again was "flipping [her] off." By this time, witness Anderson saw McDonald "gesture with his hand," and start to tailgate Hansen. In his words, McDonald "was directly on top of the Honda." At the Lone Tree overpass, Anderson saw McDonald move into lane two, pull even with Hansen, but then not pass either Hansen or Anderson.

All of this evidence taken together provides ample evidence to support the jury's verdict. Although we recognize that McDonald provided a very different account of the

6

events, our inquiry is constrained to whether the evidence, when viewed in the light most favorable to the judgment, was sufficiently reasonable, credible, and of solid value to allow the jury to find him guilty beyond a reasonable doubt. (*People v. Gonzales and Soliz, supra,* 52 Cal.4th at p. 294.) We conclude that the cumulative evidence in this case satisfies this standard.

> 2. Substantial Evidence Supports McDonald's Conviction for Failing to Stop at an Accident Involving an Injury.

We also conclude that substantial evidence supports McDonald's conviction for failing to stop at the scene of an injury accident. McDonald admitted that he knew Hansen had been driving next to him at the Lone Tree overpass, saw in his side-view mirror a dust cloud on the other side of the road, assumed it was the Honda, but did not stop. He simply argues that he had no duty to stop because he was not "involved" in the accident and did not know that anyone was injured, as required by the instruction given to the jury. This argument fails because the jury's findings that he was guilty of two counts of voluntary manslaughter—findings that we have already concluded were supported by substantial evidence—establish that he *was* involved in, and therefore knew about, the accident.

Furthermore, separate circumstantial evidence was presented upon which a reasonable jury could have relied to conclude that McDonald left the scene knowing that he had been involved in the accident. Immediately after the accident, Anderson tried to take a picture of the license plate of McDonald's truck. He was in lane one, and McDonald was driving behind him in lane two. Anderson slowed down to about 40 or 50 miles an hour, but McDonald slowed "proportionate to what [he] was doing." Anderson tried to make a series of maneuvers to get behind McDonald, but, in his words, "[t]he truck immediately changes lanes and gets behind me and slows down." Evidence was also presented that McDonald eventually drove back to his sister and brother-in-law's house, where he was staying at the time. The day after the accident, McDonald's brother-in-law told him about a newspaper report that law enforcement officials were looking for

7

the owner of a black truck. McDonald's brother-in-law asked McDonald to leave because McDonald did not turn himself in.

The jury could have inferred from this evidence that McDonald was trying to avoid being identified because he knew he had been involved in the accident. Given this evidence, and the jury's findings that McDonald was guilty of two counts of voluntary manslaughter, we reject his argument that insufficient evidence supported his conviction for failing to stop at the scene of an injury accident.

B.      *McDonald Fails to Demonstrate that his Defense Counsel Was
        Prejudicially Ineffective.*

McDonald argues that his defense counsel was ineffective by failing to cross-examine two witnesses fully. First, he argues that his counsel should have cross-examined the prosecution's accident-reconstruction expert about her incorrect testimony that she had testified at McDonald's preliminary hearing. Second, he argues that his counsel should have cross-examined a highway patrol officer who incorrectly testified that Hansen identified McDonald as the driver of the truck from an array of photographs she was given some time after the accident. We conclude that it was neither ineffective nor prejudicial for defense counsel to fail to cross-examine these witnesses on these points.

To establish a claim of ineffective assistance of counsel, a defendant must show that (1) trial counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) the defendant suffered prejudice, i.e., there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 694 (*Strickland*); *People v. Carter* (2003) 30 Cal.4th 1166, 1211 (*Carter*).) A reasonable probability is a probability sufficient to undermine confidence in the outcome. (*Strickland, supra,* 466 U.S. at p. 694; *Carter, supra,* 30 Cal.4th at p. 1211.) The defendant must show that " 'the [act or] omission was not attributable to a tactical decision which a reasonably competent, experienced criminal defense attorney would make.' [Citation.]" (*People v. Gurule* (2002) 28 Cal.4th 557, 610-611.) Finally, with

8

respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result [of the proceeding] would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. [Citations.]" (*People v. Ledesma* (1987) 43 Cal.3d 171, 327.) It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding." " ' "Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." ' [Citation.]" (*People v. Mercado* (2013) 216 Cal.App.4th 67, 80)

McDonald fails to satisfy these requirements. As for the prosecution's accident-reconstruction expert, although it is true that she incorrectly testified at trial that she had previously testified at McDonald's preliminary hearing, the parties filed a subsequent stipulation clarifying that the expert in fact had not testified at the preliminary hearing. Similarly, although it is also true that the highway patrol officer incorrectly testified that Hansen had identified McDonald as the driver of the truck from an array of photographs, the parties filed another stipulation to clarify that this testimony was incorrect. These stipulations corrected any conjectural error by defense counsel in failing to cross-examine the witnesses on these points, and McDonald therefore cannot establish that his trial counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. (*Strickland, supra,* 466 U.S. at pp. 687-688; *Carter, supra,* 30 Cal.4th at p. 1211.)

Furthermore, there was no prejudice. The expert's testimony that she had testified at the preliminary hearing was hardly damaging to McDonald since the expert candidly admitted that she could not remember any of the specifics of that testimony. If anything, the stipulation that the expert in fact had not testified at the preliminary hearing undermined her credibility and kept the prosecution from rehabilitating it. And the highway patrol officer's testimony that Hansen had picked out McDonald as the truck driver from an array of pictures was not damaging because McDonald's identity was never disputed at trial. Under these circumstances, McDonald cannot demonstrate a reasonable probability that, but for his counsel's alleged errors, the result of the trial

9

would have been different.  (See *Strickland, supra,* 466 U.S. at pp. 687-688, 694; *Carter, supra,* 30 Cal.4th at p. 1211.)

      C.     *The Jury Was Not Improperly Instructed on Inconsistent Statements.*

McDonald argues that the trial court improperly instructed the jury on a defendant's inconsistent statements and consciousness of guilt.  This standard instruction, based on CALCRIM No. 362, told the jury that "[i]f the defendant made a false or misleading statement before this trial relating to the charged crime, knowing the statement was false or intending to mislead, that conduct may show he was aware of his guilt of the crime and you may consider it in determining his guilt."  McDonald contends this instruction was improper because he had made "no significant inconsistent statement," and the instruction "had the effect of focusing the jury's attention on minor excusable inconsistencies they might have considered to show consciousness of guilt."  We disagree.

To begin with, McDonald *did* make inconsistent statements before his trial.  As one example, McDonald testified that immediately before Hansen swerved out of control she "was off to [his] left side."  When asked if she was "behind the front of your bumper a little bit, then?," he responded, "Yeah.  Yeah.  Yes."  But before trial, McDonald told an investigator that he believed the crash was caused when Hansen's car "had just begun to extend with its front beyond the front of [his] vehicle . . . [and] the female driving the Honda decided she did not have sufficient space or time to continue advancing forward and beyond [his] truck to maneuver a lane change in front of [him] without colliding into [his] driver's side or the SUV travelling in front of [him]."  In other words, before trial McDonald suggested that Hansen crashed after losing control in a failed effort to pass him and pull into his lane, although at trial he suggested that Hansen crashed after losing control while she was driving alongside of him.  Although this inconsistency may have been slight or innocuous, the prosecution was free to argue—and the jury was free to conclude—that the differences were meaningful and an indication of McDonald's guilt.

In any event, the trial court instructed the jury that all the instructions were not necessarily applicable:  "Some of these instructions may not apply, depending on your

10

findings about the facts of the case. Do not assume just because I give a particular instruction that I'm suggesting anything about the facts." (CALCRIM No. 200.) Thus, if the jury had found that there were no inconsistencies in McDonald's statements, it would have followed this instruction by deeming inapplicable the instruction on inconsistent statements. We fail to see how McDonald was prejudiced under these circumstances.

D. *McDonald Fails to Demonstrate that the Prosecutor Engaged in Prejudicial Misconduct During His Closing Argument.*

McDonald argues that the prosecutor engaged in prejudicial misconduct by disparaging defense counsel and misstating the law in closing argument. He further argues that his trial counsel's failure to object to this misconduct constituted ineffective assistance of counsel. We disagree with both of these arguments.

At the outset, we conclude that McDonald waived his claims of prosecutorial misconduct by failing to object below. (*People v. Hill* (1998) 17 Cal.4th 800, 820 [defendant may not complain on appeal of prosecutorial misconduct unless defendant objected below in timely fashion and on same ground and requested jury be admonished to disregard impropriety].)

But even if McDonald had properly preserved the argument, we would conclude that it is unpersuasive. McDonald first claims that during closing argument the prosecutor made disparaging remarks about defense counsel. These comments included that defense counsel "followed up with a quick slide in," "gloss[ed] over" critical facts, did a "bait and switch," engaged in a "game of Three Card Monte," and "jump[ed] ship and bail[ed] out" of an idea. McDonald asserts that these comments were "outrageous," but we disagree. Prosecutors are " ' "given wide latitude during argument. The argument may be vigorous as long as it amounts to fair comment on the evidence, which can include reasonable inferences, or deductions to be drawn therefrom. [Citations.]" ' " . . . "A prosecutor may 'vigorously argue his case and is not limited to "Chesterfieldian politeness" ' [citation], and [the prosecutor] may 'use appropriate epithets. . . ." ' " (*People v. Wharton* (1991) 53 Cal.3d 522, 567-568)." (*People v. Williams* (1997) 16 Cal.4th 153, 221.) We have found no authority supporting the notion

11

that attorneys must refrain from the type of metaphors and colloquialisms that the prosecutor used here when arguing the weakness of the other side's arguments.

Furthermore, none of these comments was prejudicial. " '[W]hen the claim focuses upon comments made by the prosecutor before the jury, the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion.' [Citation.]" (*People v. Smithey* (1999) 20 Cal.4th 936, 960.) A defendant's conviction will not be reversed for prosecutorial misconduct unless it is reasonably probable that a result more favorable to the defendant would have been reached if the misconduct had not occurred. (*People v. Crew* (2003) 31 Cal.4th 822, 839.) We conclude that it is not reasonably probable that the jury here would have come to a different conclusion if the prosecutor had not made these comments.

Because we conclude that the prosecutor's comments did not amount to misconduct and were not prejudicial, we reject McDonald's claim that his counsel was ineffective for not objecting to them. Counsel is not ineffective in failing to object when the trial court would likely have overruled the objection. (*People v. Mendoza* (2000) 78 Cal.App.4th 918, 924.)

McDonald separately argues that during closing argument the prosecutor misstated the law about leaving the scene of an accident. Essentially, he argues that the prosecutor incorrectly argued to the jury that McDonald could be found guilty of failing to stop at an injury accident if he was simply aware of the accident, rather than having been "involved in the accident" and having known "that the accident was of such a nature that one would reasonably anticipate that it resulted in injury to a person."

In reviewing a claim that a prosecutor misstated the law during closing argument, "we presume that the jury relied on the instructions, not the arguments, in convicting defendant. '[I]t should be noted that the jury, of course, could totally disregard all the arguments of counsel.' [Citation.] . . . [O]ur presumption [is] that 'the jury treated the court's instructions as statements of law, and the prosecutor's comments as words spoken

12

by an advocate in an attempt to persuade.' [Citation.]" (*People v. Morales* (2001) 25 Cal.4th 34, 47, italics omitted.)

Our review of the closing argument does not reveal any clear misstatements of the law by the prosecutor, much less any that were prejudicial. To the extent the prosecutor was imprecise regarding the knowledge element of leaving the scene of an accident, he himself clarified any confusion by stating that the definition requires that "you [a defendant] are an involved party."

More importantly, it is undisputed that the actual instruction given by the court was a proper summary of the law. It stated that "[t]o prove the defendant is guilty" of a violation of Vehicle Code section 20001, "[t]he People must prove that: [¶] 1. While driving the defendant was involved in a vehicle accident; [¶] 2. The accident caused the death of or permanent, serious injury to someone else; [¶] 3. The defendant knew that he had been involved in an accident that injured another person or know from the nature of the accident it was probable that another person had been injured; [¶] 4. The defendant willfully failed to perform one or more of the following duties: (a) To immediately stop at the scene of the accident; (b) To provide reasonable assistance to any person injured in the accident; [¶] . . . [¶] (e) The driver must, without unnecessary delay, notify either the police department of the city where the accident happened or the local headquarters of the California Highway Patrol if the accident happened in an unincorporated area. [¶] Someone commits an act willfully when he or she does it willingly or on purpose. It is not required that he or she intend to break the law, hurt someone else, or gain any advantage. [¶] Duty to stop means the driver must stop his or her vehicle as soon as reasonably possible under the circumstances." This instruction was clear and straightforward, and we must presume that the jury relied upon it in rendering its verdict. (*People v. Morales, supra,* 25 Cal.4th at p. 47.) Based on this clear instruction and the ample evidence supporting the jury's verdict, we conclude it is not reasonably probable that McDonald would have obtained a more favorable verdict had his counsel timely objected to any of the prosecutor's supposedly incomplete statements of law.

13

*E.      The Trial Court Did Not Abuse its Discretion in Denying McDonald's Motion for New Trial.*

During the trial, the prosecution's accident-reconstruction expert testified that she had discussed witnesses' statements with an investigator from the District Attorney's Office at some time more than a year before the trial. McDonald claims that he was not informed of these statements until the trial and that the prosecutor's failure to notify him of them in advance of the trial violated section 1054.1.[4] We disagree and conclude there was neither a violation nor any prejudice.

We review the denial of a motion for a new trial made on a nonconstitutional ground for abuse of discretion. (*People v. Delgado* (1993) 5 Cal.4th 312, 328.) Here, the trial court did not abuse its discretion in denying McDonald's motion for new trial. Under section 1054.1, subdivision (f), a prosecutor is required to disclose "[r]elevant written or recorded statements of witnesses whom the prosecutor intends to call at the trial, including any reports or statements of experts made in conjunction with the case . . . ." In arguing that the prosecutor violated this provision, McDonald quotes only *part* of it: the subordinate clause without its introductory word, "including." He quotes the section as requiring prosecutors to disclose "any reports . . . of experts made in conjunction[] with the case." But a reading of the plain language of the full statute reveals that its scope is limited to "written or recorded" statements. We find no evidence in the record that any pretrial statement made by the prosecution's accident-reconstruction expert was either written or recorded.

Furthermore, even if the prosecutor could be considered to have failed to satisfy discovery obligations by not notifying McDonald of the expert's oral statements before trial, we conclude that McDonald suffered no prejudice. McDonald argues that he was "unprepared for the unknown and . . . was ambushed at trial." The prosecution's expert testified that there "was no physical evidence to indicate that the Honda was actually

---

[4] In the motion for new trial, McDonald argued that the prosecution's failure to provide the statements constituted a violation of his federal and state rights. He does not pursue his federal argument on appeal.

going towards [lane two]" before it spun out of control. McDonald's expert, who testified after the prosecution's expert, contradicted this testimony by opining that Hansen was travelling toward lane two before steering to the left, which caused her to lose control. Although he claims to have been surprised by the prosecution expert's testimony, McDonald fails to explain in any specific way how he would have defended the case differently or effectively impeached the prosecution's expert if he had known earlier about the expert's prior statements. Under these circumstances, we conclude that McDonald has failed to show that there is a reasonable probability that any error contributed to the verdict. (*People v. Watson* (1956) 46 Cal.2d 818, 836.) Stated another way, after examining the entire record, we are not " ' " 'of the "opinion" that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the [alleged] error.' " ' " (*People v. Wilkins* (2013) 56 Cal.4th 333, 351.)

> F.      *The Trial Court Did Not Abuse its Discretion in Denying Probation.*

We review a trial court's denial of probation under the deferential abuse of discretion standard of review. (See, e.g., § 1203.1; *People v. Carbajal* (1995) 10 Cal.4th 1114, 1120-1121; *People v. Bradley* (2012) 208 Cal.App.4th 64, 89.) " 'The burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.' " (*People v. Superior Court* (*Alvarez* ) (1997) 14 Cal.4th 968, 977-978, quoting *People v. Superior Court* (*Du*) [(1992)] 5 Cal.App.4th [822, 831].)

We conclude that McDonald has failed to show that the trial court's decision to deny him probation was irrational or arbitrary. Our review of the record shows that the trial court carefully considered McDonald's sentence. It issued a tentative sentencing decision, allowed the parties to respond, and then adopted the tentative decision as its final order.

15

In determining McDonald's base term, the trial court imposed the *lower*, two-year, term for the convictions for vehicular manslaughter and added five years for the enhancement of fleeing the scene. The court explained, "I believe the mitigated or lower term is [warranted] based on [McDonald's] absolutely clean record, the fact that he has strong family support[,] and the tremendous financial impact that [the sentence] will have on his family." The trial court also ordered concurrent sentences: "I'm not going to . . . make consecutive the sentences on the three different crimes of which he was convicted." Thus, McDonald was sentenced to a total of seven years.

Turning to probation, the court in its tentative decision stated, "I've considered carefully the seriousness of the crime, the fact that two people died, that the victims were vulnerable[,] . . . [¶] [and t]hat [McDonald] was an active participant in the crime. [¶] I've weighed carefully the terrible impact this will have on [McDonald's] family and the, perhaps, inability of him to make restitution, but I believe there was insurance involved. But I balanced all of that in weighing also the tremendous tragic impact on the family and friends of the victim[s]. [¶] And all of those weighed together, I come down with the decision to deny probation. . . ." In adopting its tentative decision, the trial court pointed out that McDonald "knew he'd been involved in an accident. And instead of calling the police immediately or pulling over, which he should have done, he left." The court explained, "had Mr. McDonald pulled over and the same findings made by the jury, I would have very carefully considered a suspended sentence and probation. Had he even called when his brother-in-law told him, hey, the police think it's you; you better call them, I would have considered even closer, or further away—I would have considered a suspended sentence." Finally, the court commented that it did not deny probation "with any sense of satisfaction. I know the terrible impact this will have on [McDonald's] family. But the law requires appropriate consequences for conduct, and this is what I feel is the appropriate consequence."

The trial court observed that this case was particularly "tragic in all of its aspect[s]." We could not agree more. But in sentencing McDonald, the trial court

16

properly weighed the evidence and appropriate factors, and it was neither arbitrary nor irrational for it to deny probation.  Thus, we lack the authority to alter the sentence.

III.
DISPOSITION

The judgment is affirmed.

_____
Humes, J.

We concur:

_____
Reardon, Acting P.J.

_____
Rivera, J.