Filed 10/19/20  P. v. Guzman CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>LEONARDO GUZMAN,<br><br>    Defendant and Appellant. | B299861<br><br>Los Angeles County<br>Super. Ct. No. TA146738 |

APPEAL from a judgment of the Superior Court of Los Angeles County, Allen J. Webster, Jr., Judge. Affirmed as modified with directions.

Adrian K. Panton, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Attorney General, Steven D. Matthews and Rama R. Maline, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

A jury convicted defendant and appellant Leonardo Guzman of assault with a firearm, possession of a firearm by a felon, and unlawful possession of ammunition. The jury also found true allegations that he personally used a firearm and inflicted great bodily injury during the commission of the assault. The trial court sentenced him to 17 years in state prison.

Guzman testified at trial. On appeal, he argues the trial court prejudicially abused its discretion under Evidence Code section 352 by ruling Guzman's 2003 automobile theft conviction was admissible for impeachment purposes. He also raises several arguments related to various assessments and a restitution fine the trial court imposed. We reject his arguments, correct the amounts of certain assessments in the oral pronouncement of judgment, and affirm the judgment.

## PROCEDURAL BACKGROUND

The Los Angeles County District Attorney filed an amended information charging Guzman with assault with a firearm (Pen. Code, § 245, subd. (a)(2); count one),[1] possession of a firearm by a felon (§ 29800, subd. (a)(1); count two), unlawful possession of ammunition (§ 30305, subd. (a)(1); count three), and attempted murder (§§ 664, 187, subd. (a); count four). The information further alleged Guzman personally used a firearm (§ 12022.5, subd. (a)) and inflicted great bodily injury (§ 12022.7, subd. (a)) during the commission of count one and sustained five prior prison term convictions (§ 667.5, subd. (b)).

---

[1] All undesignated statutory references are to the Penal Code.

The trial court granted the prosecution's oral motion to dismiss count four. The jury convicted Guzman on the remaining three counts. The jury found the firearm use and great bodily injury allegations true, and found Guzman sustained six prior felony convictions for purposes of the possession of a firearm by a felon charge. Guzman admitted the prior prison term allegations.

The court sentenced Guzman to 17 years in state prison, consisting of an upper term of four years on count one, plus 10 years for the firearm enhancement and three years for the great bodily injury enhancement. The court imposed concurrent three-year upper terms on counts two and three. The court dismissed the prior prison term enhancements.

Guzman timely appealed.

## FACTUAL BACKGROUND

### I.     Prosecution's case

Wilber Lozano lived on South Broadway Street in Los Angeles. He often saw Guzman riding his bicycle on the street. He knew Guzman as "Shorty." Guzman was missing the middle and ring fingers from his right hand.

At approximately 3:00 a.m. on July 15, 2018, Lozano was lying down in the back bedroom of his house. Rolando Gomez, Lozano's friend, was drinking beer on the patio. Guzman rode up on his bicycle and told Gomez he was looking for "Poncho," which was Lozano's nickname among friends.

Gomez told Lozano someone was looking for him. Lozano went outside. Guzman claimed Lozano stole his bicycle and needed to pay him $40. Lozano did not steal Guzman's bicycle

and did not know what Guzman was referring to. Guzman took a gun out of his jacket and shot Lozano two or three times. After shooting him, Guzman told Lozano: "Now you don't owe me anything," and left on his bicycle. One of the bullets hit the artery in Loranzo's leg. Gomez found Lozano passed out behind the house. He put a tourniquet on Lozano's leg.

Los Angeles Police Department Officers Lugo and Herrera arrived at the scene. They followed a blood trail to the back of the house where they found Lozano lying unconscious in a pool of blood. Paramedics took Lozano to the hospital. Lozano had to have two surgeries. He had scarring on both his legs. At the time of trial, Lozano still had pain in his legs, and he could not feel his right leg from his knee to his ankle.

On July 17, Detectives Hyoung and Langsdale contacted Lozano. Detective Hyoung asked Lozano several times who the shooter was, and Lozano did not give a straight answer. Detective Hyoung interviewed Gomez, who identified the shooter.

At 1:00 p.m. on August 1, Lozano and his friend Humberto Hernandez went looking for Guzman. They located Guzman and called the police. Officers Mejia and Andrade found Guzman and handcuffed him to a gate. Officer Mejia took Lozano to where Guzman was detained, and Lozano identified Guzman as the man who shot him. Lozano said Guzman had difficulty getting the gun out of his pocket because of his missing fingers. In a recorded interview from August 15 that was played for the jury, Lozano again told Detective Hyoung that Guzman was the shooter. Lozano also told Detective Hyoung that while he was in the hospital, Guzman's brother went to his house and shot it up.

Ronald Morales knew Lozano, Gomez, and Guzman. When shown a surveillance video of the shooting, Morales identified

Guzman as the shooter. When Morales testified, he was in custody for a felon in possession of a firearm charge. Prior to testifying, Morales was placed in the same cell with Guzman, who told Morales to testify Guzman was not the shooter.

The prosecution introduced evidence showing Guzman sustained prior felony convictions. Los Angeles Police Department fingerprint technician Nina Kaminsky took Guzman's fingerprints, compared them to the fingerprints in Guzman's prior prison packet and other documents showing his prior convictions, and concluded the fingerprints all matched.

## II.     Defense case

Guzman testified that he knew Lozano as an acquaintance, but did not shoot him.

## DISCUSSION

## I.     The trial court did not abuse its discretion

Guzman's prior felony convictions were introduced to impeach him. On appeal, Guzman argues the trial court abused its discretion by denying his motion to exclude a 2003 auto theft conviction without considering that five more recent convictions would also be used to impeach him. The Attorney General contends the trial court did not abuse its discretion by admitting the 2003 conviction, and even assuming it did, the error was harmless. We agree with the Attorney General.

## A. Background

During a break in the prosecution's case, defense counsel objected to the admission of Guzman's convictions from 2003 for auto theft and 2008 for possession of a firearm by a felon, arguing their probative value was substantially outweighed by the danger of creating undue prejudice under Evidence Code section 352 because the convictions were more than 10 years old. The prosecution argued the 2003 conviction was not sufficiently remote to warrant exclusion because it was probative to show Guzman continuously engaged in illegal activity. The prosecution argued the 2008 conviction was not remote because it occurred within 10 years of the shooting for which Guzman was on trial.

The experienced trial judge ruled the convictions admissible under Evidence Code section 352. The court correctly concluded Guzman's priors from 2003 and 2008, as well as his other priors, were crimes of moral turpitude. The court acknowledged the 2003 conviction was more than 10 years old, but concluded the conviction was not remote because the additional convictions Guzman sustained in 2008, 2010, 2012, 2013, and 2015 demonstrated continuous criminal conduct affecting his credibility.[2]

Guzman testified at trial. On direct examination, he admitted that he sustained prior felony convictions. On cross-examination, the prosecution asked Guzman about his prior felony convictions, including the 2003 conviction for vehicle theft

---

[2]    Although the court did not explicitly say so, it appears the court agreed with the prosecution that the 2008 conviction was less than 10 years old. Guzman now concedes that point and does not assert that admission of the 2008 conviction was error.

6

and the 2008 conviction for being a felon in possession of a firearm. Guzman answered the prosecution's questions by admitting he sustained the prior felony convictions.

### B. Analysis

"A witness may be impeached with any prior conduct involving moral turpitude whether or not it resulted in a felony conviction, subject to the trial court's exercise of discretion under Evidence Code section 352. [Citations.]" (*People v. Clark* (2011) 52 Cal.4th 856, 931.)[3] "When determining whether to admit a prior conviction for impeachment purposes, the court should consider, among other factors, whether it reflects on the witness's honesty or veracity, whether it is near or remote in time, whether it is for the same or similar conduct as the charged offense, and what effect its admission would have on the defendant's decision to testify. [Citations.]" (*Ibid.*) "Because the court's discretion to admit or exclude impeachment evidence 'is as broad as necessary to deal with the great variety of factual situations in which the issue arises' [citation], a reviewing court ordinarily will uphold the trial court's exercise of discretion [citations]." (*Id.* at p. 932.)

Applying these principles, we reject Guzman's argument that the trial court abused its discretion by finding his 2003 vehicle theft conviction admissible under Evidence Code section

---

[3]     Evidence Code section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

7

352. "California courts have repeatedly held that prior convictions for burglary, robbery, and other various theft-related crimes are probative on the issue of the defendant's credibility. [Citations.]" (*People v. Mendoza* (2000) 78 Cal.App.4th 918, 925 (*Mendoza*).)

On appeal, Guzman does not challenge the trial court's conclusion that the 2003 conviction was not sufficiently remote to warrant exclusion. Instead, relying on *Mendoza*, *supra*, 78 Cal.App.4th 918, Guzman argues the trial court erred by not explicitly considering the "numerosity" of the prior convictions in deciding to admit the 2003 conviction. We disagree. "[T]here is no limitation on the number of prior convictions with which the defendant's credibility can be impeached. [Citations.]" (*Mendoza*, *supra*, 78 Cal.App.4th at p. 927.) Guzman appears to be arguing the trial court was required to explicitly state on the record that it had considered the possibility that the 2003 conviction might be inadmissible because other prior convictions were being admitted. Here, we reject both Guzman's premise and conclusion. The court obviously considered the 2003 conviction in light of the later convictions. The test is not whether the trial court stated every possible reason to admit the evidence or every possible reason not to. The test is whether the court abused its broad discretion. We find no error in the court's conclusion that the probative value of the 2003 conviction was not substantially outweighed by the danger of undue prejudice.[4]

---

[4] Even if we were to find error, we would find no prejudice. The evidence presented against Guzman was very strong, and included direct testimony from the victim and Gomez that Guzman was the shooter. It is not reasonably probable that excluding one of his six prior felony convictions would have

8

## II. Guzman's unauthorized sentence argument

Guzman next points out that although the abstract of judgment reflected that the trial court imposed $120 in court security assessments (one $40 assessment for each of Guzman's three convictions; § 1465.8, subd. (a)) and $90 in court facilities assessments (one $30 assessment for each conviction; Gov. Code, § 70373), this is inconsistent with the court's oral pronouncement of judgment, in which the court imposed $60 ($20 per count) in court security assessments and one $30 court construction fee. Citing *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), Guzman argues: "Implicit in the court's failure to orally impose the assessment[s] was a finding that appellant lacked the ability to pay." He argues that because the assessments listed on the abstract of judgment were not orally pronounced as part of the sentence, and because they were statutorily unauthorized, they must be stricken.

We reject Guzman's argument that the trial court stated and imposed the correct assessment amounts in the abstract of judgment and minute order but incorrect amounts during the oral pronouncement of judgment based on an implicit finding of an inability to pay. Instead, it appears the court made a slight error during oral pronouncement of judgment. The assessment amounts stated in the abstract of judgment and minute order were correct. (See § 1465.8, subd. (a)(1) ["To assist in funding court operations, an assessment of forty dollars ($40) shall be imposed on every conviction for a criminal offense . . . ."]; Gov.

---

resulted in a more favorable outcome for him. (See *People v. Watson* (1956) 46 Cal.2d 818, 836.)

Code, § 70373 ["To ensure and maintain adequate funding for court facilities, a[] [$30] assessment shall be imposed on every conviction for a criminal [misdemeanor or felony] offense."].) We order the oral pronouncement of judgment modified to impose a $30 court facilities assessment and a $40 court operations assessment for each count. (See *People v. Rosales* (2014) 222 Cal.App.4th 1254, 1263.)

### III.  Guzman's *Dueñas* arguments

As discussed above, the trial court imposed three $40 court security assessments (§ 1465.8, subd. (a)), and three $30 court facilities assessments (Gov. Code, § 70373). The court also imposed a $300 restitution fine. (§ 1202.4, subd. (b)(1).) Relying on *Dueñas*, *supra*, 30 Cal.App.5th 1157, Guzman now challenges the assessments and fine on due process grounds. Guzman concedes he did not object to the imposition of the assessments or fine. Guzman was sentenced over three months after *Dueñas* was decided. Guzman thus has forfeited his *Dueñas* argument by failing to object. (See *People v. Bipialaka* (2019) 34 Cal.App.5th 455, 464; *People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1153-1155.)

We also reject Guzman's contention, raised in the alternative, that his counsel's failure to object constituted ineffective assistance of counsel. To establish ineffective assistance of counsel, an appellant bears the burden of showing prejudice, meaning a reasonable probability that but for the challenged act or omission of counsel, the appellant would have obtained a more favorable result. (*People v. Centeno* (2014) 60 Cal.4th 659, 674-676 (*Centeno*); see also *In re Crew* (2011) 52

10

Cal.4th 126, 150 ["If a claim of ineffective assistance of counsel can be determined on the ground of lack of prejudice, a court need not decide whether counsel's performance was deficient. [Citation.]"].) Although Guzman asserts he was prejudiced because the lack of objection deprived him of a *Dueñas* hearing, he does not address whether the record contains any support for the assertion that the trial court would have granted him *Dueñas* relief. Upon reviewing the record, we find no indication that Guzman was unable to pay the fine and assessments. (Cf. *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1075-1076 [inability to pay costs of appointed counsel does not establish inability to pay restitution fine or other court-imposed fees].) Further, the court could have found him able to pay the fine and assessments from prison wages. (See *id.* at pp. 1075-1077 [any *Dueñas* error was harmless due to defendant's ability to earn prison wages equaling amount of fine and assessments]; *People v. Jones* (2019) 36 Cal.App.5th 1028, 1035 [same]; *People v. Johnson* (2019) 35 Cal.App.5th 134, 139-140 [same].) Guzman has failed to satisfy his burden to show prejudice.

## DISPOSITION

The oral pronouncement of judgment is ordered modified to reflect a $30 court facilities assessment and a $40 court security assessment for each count. In all other respects, the judgment is affirmed.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



CURREY, J.


We concur:



MANELLA, P.J.


WILLHITE, J.