Filed 1/27/26  P. v. Lubkin CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>DAVID KYLE LUBKIN,<br><br>        Defendant and Appellant. | A170114<br><br>(Sonoma County<br> Super. Ct. No. SCR-733382-1) |

A jury convicted defendant David Kyle Lubkin of the first degree murder (Pen. Code,[1] § 187, subd. (a)) of Ezequiel Garcia and shooting at an occupied motor vehicle (§ 246).  On appeal, Lubkin argues he was deprived of his right to a fair trial because of prosecutorial misconduct, ineffective assistance of trial counsel, and the trial court's admission of certain evidence.  We affirm.

## I.  BACKGROUND

In July 2022, Lubkin was charged by amended felony information with murder (§ 187, subd. (a); count 1) and shooting at an occupied motor vehicle (§ 246; count 2), with a firearm enhancement (§ 12022.53, subd. (d)) alleged as to each count.

---

[1] Undesignated statutory references are to the Penal Code.

1

## A. *Jury Trial*

We summarize only the facts necessary to provide an understanding of the offenses. Because Lubkin admitted that he shot Garcia, much of the evidence presented at trial is irrelevant to the issues raised on appeal.

### 1. Prosecution Case

In September 2019, Garcia was shot in his car in the parking lot of the Petaluma Outlets. He died at the scene and his cause of death was a gunshot wound to the chest.

The police investigation revealed that shortly before his death, Garcia had listed three items for sale on Craigslist, including two gold chain necklaces. On the day he was killed, a text chain between Garcia and an unknown number demonstrated that Garcia arranged to meet with someone who wanted to buy one of the necklaces. They agreed to meet at the Petaluma Outlets that night at 7:30 p.m. The unknown number was registered to TextMe, an app which allows users to generate a different phone number. A subsequent investigation connected Lubkin to the TextMe account.

H.B. testified that on the evening of the shooting he had shopped at the outlets with his wife and child. Around 7:30 or 8:00 p.m., they walked to their car in the parking lot. After H.B. backed out of his parking space, a black Infiniti was blocking the roadway. While H.B. was stuck behind the Infiniti, he saw Lubkin standing next to the car on the passenger side with the car door open, talking to the car's driver, Garcia.[2] Lubkin leaned down on to the door's armrest to speak with Garcia. At some point, H.B. saw Lubkin

---

[2] H.B. did not see the person's face and did not identify Lubkin or Garcia. Because Lubkin admits that he shot and killed Garcia, we refer to the driver as Garcia and the person H.B. described as Lubkin for clarity and ease of reading.

2

step backwards, pull out a gun, and shoot at the car two or three times. Bullet holes were found in both the driver's side rear quarter panel and the passenger side rear headrest of Garcia's car, as well as in a nearby building.

H.B. repeatedly testified that Lubkin first took a step back from the car before Garcia began to drive away. The car tried to take off immediately after Lubkin stepped back. The car had started driving away when Lubkin starting shooting, but the car was not that far from Lubkin. Lubkin then walked away towards the back of the parking lot.

H.B. drove off, exited the parking lot, and when he drove over the freeway overpass, he saw a red Ford turned on with its lights on in the outlets parking lot. After they drove away, H.B.'s wife called 911. H.B. and his wife were interviewed at the Petaluma police station that night. A few days later, they did a walkthrough interview with the police at the parking lot.

## 2. Defense Case

Lubkin testified in his own defense. In September 2019, he lived in Concord with his family. On September 25, 2019, he saw a Craigslist post for a gold necklace listed for sale at a little under $2,000. He contacted the seller—Garcia—and they arranged via text message to meet in Santa Rosa, where Lubkin paid Garcia $1,500 for the item. Lubkin brought a gun with him for protection. Three days later, he took the necklace to a jewelry store where the jeweler informed him the chain was fake and not made of real gold. Lubkin was angry and wanted his money back. He found a different gold necklace with a gold pendant that Garcia had listed on Craigslist. Not wanting to contact Garcia from his phone number, Lubkin used the TextMe app to create a new phone number and contacted Garcia about the item.

3

Lubkin suggested meeting at the Petaluma Outlets that night at 7:30 p.m. He hoped to exchange the fake necklace for his money back.

Lubkin drove his red Ford truck—the same truck he drove to meet Garcia three days earlier—to the outlets. Lubkin parked in the last row of the parking lot for various reasons, including not wanting Garcia to recognize the truck from their prior meeting. He brought a loaded gun with him. When Garcia arrived, Lubkin initially walked up to the passenger side of the car and, through the window, confirmed he was the Craigslist seller. Because there was not much space, Lubkin asked Garcia to move his car somewhere else. Garcia pulled forward and stopped in the middle of the roadway. Garcia opened the passenger door from inside and Lubkin walked back up to the car. With the engine still running, Garcia showed Lubkin the necklace and as Lubkin held it, he asked if it was "another fake necklace."

Garcia stared at Lubkin for a second and then yelled, " 'yeah, fuck you,' and started to take off." "He hit the gas of the car and started driving." When he hit the gas, Lubkin "was leaning into his car" head first and "had to try to get out the way fast before the car hit [him]." His arm was on the door's arm rest, his head was inside the car, and his feet were close to the car's frame. He had to back up and get out of the way "so nothing would hit [him] or run [his] feet over." Lubkin reached for his gun as he backed up. He took his gun out "[b]ecause [he] was afraid that [Garcia] was gonna hit [him] and stop and come back and hurt or kill [him]." Lubkin fired the gun quickly three times. The car was driving forward when he shot the gun. The car did not hit Lubkin or run over his feet. He admitted to shooting Garcia.

After Lubkin fired the gun, he stayed for a second to see if Garcia was going to turn the car around. He saw the car keep moving so Lubkin turned around and returned to his truck. He threw the necklace towards the back of

4

the parking lot, drove away, took the gun apart into pieces and threw them away in different trash cans, then drove home to Concord. Lubkin admitted that when he was questioned by the police in November 2019, he lied to them because he was scared, including lying about how often he drove the red truck, about how he had not been to Petaluma in a year, and about how he did not recognize Garcia's Craigslist postings.

### B. Verdicts and Sentencing

In May 2023, the jury found Lubkin guilty of first degree murder (count 1) and shooting at an occupied motor vehicle (count 2), and it found true the sentencing enhancements alleged as to each count. In February 2024, the trial court sentenced Lubkin on count 1 to an aggregate term of 50 years to life. On count 2, the court imposed and stayed the upper term of 7 years plus 25 years to life for the firearm enhancement.

## II. DISCUSSION

Lubkin argues he was deprived of his right to a fair trial because of prosecutorial misconduct, ineffective assistance of trial counsel, and the trial court's admission of evidence that he had sold drugs.

### A. Prosecutorial Misconduct

#### 1. Vouching for Witness

Lubkin argues the prosecutor committed prejudicial misconduct by improperly vouching for witness H.B.

##### a. Additional Background

During redirect examination, H.B. testified about his actions after he exited the parking lot, stating he looked over to see whether the shooter was following them, and in doing so he saw a truck in the parking lot that was turned on with its lights on. The prosecutor asked H.B. if he recalled whether any cars were parked near the truck, and he did not recall. The

5

prosecutor asked if it would potentially help to read a summary of his prior statement, which H.B. confirmed and the following exchange occurred:

[Prosecutor]: Just this top paragraph, Mr. [B].

And so again my question is not did you read this, but is your memory refreshed at all?

Does that change your recollection at all?

[H.B.]: It does not.

[Prosecutor]: Okay.  I really appreciate your honesty[.]

[Defense counsel]: Your Honor - -

THE COURT: Objection?

No.  Okay.

[Defense counsel]: I'll withdraw it.

THE COURT: Go ahead.

[Prosecutor]: Thank you so much. I don't have any further questions.

During closing argument, the prosecutor discussed witness credibility, asserting it was "key" given Lubkin's own testimony.  Referencing CALCRIM No. 226, the prosecutor identified various factors the jury should use in considering a witness's credibility, such as whether the witness was cooperative or evasive; biased or unbiased; gave consistent or inconsistent testimony; gave logical or illogical testimony; and whether any lying came out on the stand.  The prosecutor proceeded to discuss H.B. "as a case study" when considering these factors.  He asserted H.B. was cooperative, unbiased, and "just a regular guy trying to go shopping at the outlets with his family . . . who had this horrific scene unfold right before his eyes.  He has no interest in the outcome here.  He just is an unbiased witness."  The prosecutor stated H.B. had "minor inconsistencies" in his testimony but asserted everything he said was supported by the evidence.  The prosecutor

6

stated H.B. "described things logically." When police sergeant Walt Spiller testified, defense counsel presented a couple "minor inconsistencies" between H.B.'s testimony and information he had previously provided during his walkthrough interview. The prosecutor reminded the jury it had heard the entirety of the interview recording and urged that H.B.'s testimony was not different from what he said in 2019. The prosecutor stated H.B. "fits the bill of . . . a credible witness." He then proceeded to "contrast that with" Lubkin, whom the prosecutor asserted was biased, admitted he had lied to the police, and provided testimony that was illogical and not always consistent with the evidence.

b. *Analysis*

The People contend Lubkin forfeited his claim of improper vouching by failing to timely object and request an admonition in the trial court. "To preserve a claim of prosecutorial misconduct on appeal, ' "a criminal defendant must make a timely and specific objection and ask the trial court to admonish the jury to disregard the impropriety." ' " (*People v. Fayed* (2020) 9 Cal.5th 147, 204.) Lubkin did not object at trial to the prosecutor's challenged remarks. After the prosecutor remarked to H.B., "I really appreciate your honesty," defense counsel started to object but immediately withdrew the objection. Defense counsel did not object to the prosecutor's remarks about H.B.'s credibility during closing argument. While failure to object would not forfeit Lubkin's claim when doing so would have been futile or an admonition would be insufficient to cure the purported harm (*ibid*.), Lubkin does not argue that a timely objection would have been futile or insufficient. Lubkin cites no authority that raising this argument in his subsequent motion for new trial preserved the issue for appeal. (See *People v. Dworak* (2021) 11 Cal.5th 881, 909 [defense counsel's objections were "timely"

7

when made contemporaneous with the prosecutor's challenged remarks during closing argument].) Accordingly, Lubkin forfeited this challenge on appeal.

Anticipating this conclusion, Lubkin argues he received ineffective assistance of counsel by his counsel's failure to object to the challenged remarks.

" 'A defendant whose counsel did not object at trial to alleged prosecutorial misconduct can argue on appeal that counsel's inaction violated the defendant's constitutional right to the effective assistance of counsel.' " (*People v. Aguirre* (2025) 18 Cal.5th 629, 706 (*Aguirre*).) "[S]uch a claim requires a showing of both deficient representation and resulting prejudice." (*Ibid.*, citing *Strickland v. Washington* (1984) 466 U.S. 668, 687 [104 S.Ct. 2052].) Counsel's performance is deficient if " 'it "fell below an objective standard of reasonableness [¶] . . . under prevailing professional norms." [Citations.] Unless a defendant establishes the contrary, we shall presume that "counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy." [Citation.] If the record "sheds no light on why counsel acted or failed to act in the manner challenged," an appellate claim of ineffective assistance of counsel must be rejected "unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation." ' " (*People v. Lopez* (2008) 42 Cal.4th 960, 966.) "To establish prejudice, a defendant claiming ineffective assistance of counsel 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " (*Aguirre*, at p. 706.) "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Ibid.*) "A defendant

8

must prove prejudice that is a ' "demonstrable reality," not simply speculation.' " (*People v. Fairbank* (1997) 16 Cal.4th 1223, 1241 (*Fairbank*).)

Without deciding whether trial counsel's performance was deficient, we reject Lubkin's ineffective assistance claim on the ground that his counsel's asserted deficiencies were not prejudicial. (*Fairbank*, *supra*, 16 Cal.4th at p. 1241 [" 'If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.' "].) Lubkin asserts that H.B.'s credibility as the sole eyewitness to the shooting was paramount to the prosecution's case. According to Lubkin, H.B. told the police that Lubkin had stepped back to evade Garcia's car, which contradicted his trial testimony.

During cross-examination, defense counsel asked H.B. whether he recalled telling the police that the shooter had stepped back to avoid being hit by the car, and H.B. replied that he did not say that. Defense counsel refreshed H.B.'s recollection with a police report and asked, "So he did have to step back to avoid getting hit?" H.B. testified that Lubkin "took a step back first" before Garcia's car drove away. H.B. further testified that Garcia's car had started moving by the time Lubkin shot his gun. Sergeant Spiller testified that during the walkthrough interview conducted a few days after the shooting, H.B. told him that Lubkin had to step away from the car to avoid being hit. The audio recording of the walkthrough interview was admitted into evidence and the prosecutor played it for the jury during Sergeant Spiller's examination. Lubkin asserts the inconsistency between H.B.'s prior statement and trial testimony "was a critical distinction for [his] self-defense case."

Even assuming that there was evidence before the jury that H.B. had previously told the police that Lubkin stepped back from Garcia's car to avoid

9

getting hit, Lubkin failed to demonstrate prejudice from counsel's failure to object to the prosecutor's remarks. The trial court instructed the jury that it must decide the facts based only on the evidence presented at trial and that nothing the attorneys said was evidence. The jury was instructed that it must judge the credibility or believability of the witnesses and was provided factors to consider in evaluating their credibility, including whether any witnesses made a prior statement that was inconsistent with their trial testimony. If the jury determined there was a conflict in the evidence, it had to decide which evidence, if any, to believe. "We presume" the jury " 'generally understand[s] and faithfully follow[s] instructions.' " (*People v. Smith* (2007) 40 Cal.4th 483, 517–518.) The jury heard testimony from H.B., Sergeant Spiller, and Lubkin, and it heard the recording of H.B.'s interview during the walkthrough at the scene. It was the jury's responsibility to assess witness credibility, and therefore H.B.'s credibility. "Whatever impact [the remarks] may have had was limited by the trial court's instructions." (*Aguirre, supra*, 18 Cal.5th at p. 711.) Had trial counsel objected to the prosecutor's challenged remarks and had the trial court sustained the objections and admonished the jury, there is not a reasonable probability that the result would have been different, that is, that the jury would have found Lubkin not guilty or guilty of a lesser offense than first degree murder. Therefore, Lubkin did not establish that but for counsel's failure to object and request admonitions, the result of the proceeding would have been different.

In sum, Lubkin forfeited his challenge based on alleged improper witness vouching and failed to demonstrate that he received ineffective assistance of counsel when his trial counsel failed to object to the prosecutor's remarks.

**2. Invitation to Punish Lubkin to Deter Future Lawbreaking**

Next, Lubkin argues the prosecutor committed prejudicial misconduct when it invited the jury to punish him to deter future lawbreaking.

*a. Additional Background*

During closing argument, the prosecutor discussed complete self-defense. The prosecutor explained that Lubkin was the only source of any evidence of self-defense and asserted that his testimony was inconsistent with the testimony of H.B. and his wife, who testified that Garcia tried to drive away as fast as possible. The prosecutor also argued Lubkin's claim was inconsistent with logic and asserted that the evidence demonstrated Garcia was trying to drive away. For example, the shots came from the rear of Garcia's vehicle and the bullet went through the rear windshield, which the prosecutor argued was inconsistent with self-defense. The prosecutor also argued there was no evidence that Lubkin believed he was in harm and that his actions were inconsistent with being in fear. The prosecutor asserted there is no right to show up with a loaded gun, provoke a confrontation, and "then hide behind self-defense." Eventually, the prosecutor remarked, "Think of the consequences, think of the logic that would follow . . . if you labeled this as self-defense. Anytime two people have some kind of disagreement, that would basically say one of them can show up armed, confront that person with the disagreement, and when that person goes away you could shoot him in the back. That's the logical fallacy of the defense of total self-defense."

*b. Analysis*

Lubkin contends the prosecutor's remarks were improper because they urged the jurors to convict him to deter future lawbreaking. Again, Lubkin forfeited this claim by failing to object to the prosecutor's remarks at trial. (See *People v. Fayed*, *supra*, 9 Cal.5th at p. 204.) On this issue, Lubkin did

11

not anticipate a forfeiture issue, respond to the People's forfeiture argument, or attempt to demonstrate how his claim is preserved for appeal. Accordingly, Lubkin forfeited this challenge on appeal. For the first time in his reply brief, Lubkin argues his trial counsel rendered ineffective assistance by failing to object to the prosecutor's remarks. We will not consider Lubkin's contention. (See *People v. Duff* (2014) 58 Cal.4th 527, 550, fn. 9 [a claim of ineffective assistance raised for the first time in the reply brief is waived and should not be resolved on appeal].)

In sum, Lubkin's claim is forfeited and we will not consider any claim of ineffective assistance of counsel as it pertains to the prosecutor's remarks about the consequences if Lubkin's acts were found to be self-defense.[3]

## B. Ineffective Assistance of Counsel—Trial Continuance

Lubkin argues he received ineffective assistance of counsel when his counsel failed to seek a continuance given the anti-gun sentiment in the community at the time of trial.

### 1. Additional Background

The charges against Lubkin stemmed from his shooting and killing Garcia. Evidence presented at trial demonstrated that Lubkin shot Garcia with a gun he had built. When the police searched Lubkin's house, they found parts to build a ghost gun,[4] ammunition, and AK-47 magazines. Lubkin testified that he built guns, had been to a shooting range, did not have a permit to carry a concealed weapon, and was interested in guns.

---

[3] In his reply brief, Lubkin states that he will "be filing a companion habeas corpus petition alleging these and other instances of ineffective assistance of defense counsel." As of the filing of this opinion, this court is not aware of any petition for writ of habeas corpus filed by Lubkin.

[4] A ghost gun is a firearm with no serial number.

During closing argument, the prosecutor remarked that Lubkin had a "gun making factory" in his house.

## 2. Analysis

An ineffective assistance of counsel claim requires a showing of both deficient representation and resulting prejudice. (*Aguirre, supra*, 18 Cal.5th at p. 706; *Strickland v. Washington, supra*, 466 U.S. at p. 687.) Here, too, without deciding whether trial counsel's performance was deficient, we reject Lubkin's claim on the ground that he did not demonstrate that his counsel's failure to seek a trial continuance was prejudicial. (See *Fairbank, supra*, 16 Cal.4th at p. 1241.) Assuming for the sake of argument that there was "widespread anti-gun sentiment" at the time of trial driven by the media,[5] there is no showing Lubkin was denied a fair trial by an impartial jury. Lubkin asserts there was an "anti-gun animus in the jury pool" which prejudiced him. But he fails to demonstrate any such animus existed in the impaneled jury. He does not assert that the voir dire process was insufficient, nor does he cite to any portion of the record involving voir dire. (See *People v. McCurdy* (2014) 59 Cal.4th 1063, 1080 [in analyzing whether a defendant is prejudiced by a denial of a motion to change venue, " 'in order to determine whether pretrial publicity had a prejudicial effect on the jury, we also examine the voir dire of the jurors' "].) He neither contends nor suggests that he excused any jurors based on anti-gun sentiments. He does not suggest that he exhausted his peremptory challenges to jurors or objected to the jury's final composition. (See *People v. Beames* (2007) 40 Cal.4th 907,

---

[5] Lubkin cites 2022 and 2023 news articles from Sonoma County and other parts of the Bay Area reporting on the county's higher than normal homicide rate, gun violence, ghost guns, and proposed gun restrictions. The articles were not before the trial court and are not part of the appellate record.

922 [under settled case law, failure to exhaust peremptory challenges and to object to the jury's final composition "are deemed to signify a recognition that the jury as selected was fair and impartial"].) Lubkin's claim that "an impartial jury was unattainable" is mere speculation. Moreover, he failed to demonstrate how any alleged prejudice resulting from community hostility towards guns would be resolved by a trial continuance.

In sum, Lubkin did not demonstrate a reasonable probability that had a trial continuance been sought the result of the proceeding would have been different. Accordingly, we reject his claim for ineffective assistance of counsel.

## C. Impeachment Evidence of Prior Sales of Suboxone

Lubkin argues the trial court erred when it allowed the prosecution to introduce impeachment evidence that he previously sold the narcotic Suboxone.

### 1. Additional Background

Lubkin took the stand in his own defense. After Lubkin finished his direct testimony, the prosecutor explained that there were text messages found on Lubkin's phone indicating that between February and September 2019 he consistently sold Suboxone to multiple people. The prosecutor argued this constituted evidence of moral turpitude that the jury should know when considering Lubkin's veracity. Defense counsel argued the evidence was highly prejudicial under Evidence Code section 352. The trial court explained that the sale of drugs is conduct of moral turpitude and therefore went to Lubkin's credibility. The court allowed the People to ask Lubkin generally about prior sales of narcotics but, at least at that time, they were not allowed to introduce the text messages. The court also remarked that Suboxone is a Schedule I narcotic. The prosecutor proceeded to question

14

Lubkin and elicited testimony that he sold Suboxone to supplement his work income multiples times in 2019. Lubkin testified Suboxone is an opiate blocker.

### 2. Analysis

A court may exclude evidence "if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.) "Past criminal conduct involving moral turpitude that has some logical bearing on the veracity of a witness in a criminal proceeding is admissible to impeach, subject to the court's discretion under Evidence Code section 352." (*People v. Harris* (2005) 37 Cal.4th 310, 337; see also *People v. Clark* (2011) 52 Cal.4th 856, 931 (*Clark*) [witness may be impeached with prior conduct involving moral turpitude even if it did not result in a felony conviction].) "[A] defendant who elects to testify in his own behalf is not entitled to a false aura of veracity." (*People v. Beardslee* (1991) 53 Cal.3d 68, 95.) By taking the stand, a " 'defendant put[s] his own credibility in issue and [is] subject to impeachment in the same manner as any other witness.' " (*People v. Doolin* (2009) 45 Cal.4th 390, 438.) "In exercising its discretion, the trial court must consider," but "need not . . . rigidly follow[ ]," four factors: "(1) whether the prior conviction reflects adversely on an individual's honesty or veracity; (2) the nearness or remoteness in time of a prior conviction; (3) whether the prior conviction is for the same or substantially similar conduct to the charged offense; and (4) what the effect will be if the defendant does not testify out of fear of being prejudiced because of the impeachment by prior convictions." (*People v. Mendoza* (2000) 78 Cal.App.4th 918, 925 (*Mendoza*).)

We review a trial court's ruling on the admissibility of evidence, including a ruling regarding the probative value of the evidence in question, for abuse of discretion. (*Clark, supra*, 52 Cal.4th at p. 893.) "[T]he court's exercise of discretion will not be disturbed on appeal except upon a showing that it was exercised in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice." (*People v. Brown* (2011) 192 Cal.App.4th 1222, 1233.)

Applying the four factors, we conclude the trial court did not abuse its discretion in allowing the People to introduce evidence of Lubkin's prior sales of Suboxone. First, the sale of narcotics involves moral turpitude, as Lubkin concedes, and therefore reflects adversely on his honesty. (See *People v. Harris, supra*, 37 Cal.4th at p. 337 ["Possession of drugs for sale, which involves the intent to corrupt others, is conduct involving moral turpitude."].) Here, Lubkin's credibility was a central issue at trial because his theory of self-defense rested on his testimony that Garcia began to drive off while he was still partly inside the car and before he had stepped away. Lubkin argues selling drugs does not meaningfully speak to his credibility, pointing out that he immediately admitted he had sold Suboxone when asked by the prosecutor. But Lubkin cites no authority that only prior conduct involving lying or deceit is relevant for this factor. While drug-related crimes, such as trafficking, may not directly relate to a character for dishonesty, they are relevant to a witness's credibility because they demonstrate "a readiness to do evil." (*People v. Gabriel* (2012) 206 Cal.App.4th 450, 459.) This readiness necessarily implicates a willingness to be dishonest. (See *People v. Castro* (1985) 38 Cal.3d 301, 315.) Lubkin also argues the trial court incorrectly stated that Suboxone is a Schedule I narcotic when in fact it is a Schedule III narcotic with less potential for abuse than Schedule I narcotics. But there is

16

no showing that the court's misstatement, or misunderstanding, of the drug's classification had any bearing on its ruling. Regardless of Suboxone's drug classification, its sale constitutes conduct involving moral turpitude.

Second, Lubkin's multiple sales of Suboxone in 2019 occurred near in time to Garcia's murder in September 2019, increasing the evidence's probative value. Lubkin does not suggest otherwise.

Third, as Lubkin asserts, selling drugs is dissimilar to the charged offense of murder. This supports the trial court's ruling, though. (See *Mendoza*, *supra*, 78 Cal.App.4th at p. 926 [prior convictions which were not similar to the current gang-related murder charge weighed against the exclusion of the priors].) Instead, it is prior conduct which is similar or identical to the charged offense which may create a risk of prejudice. (See *People v. Rist* (1976) 16 Cal.3d 211, 219 ["A jury which is made aware of a similar prior conviction will inevitably feel pressure to conclude that if an accused committed the prior crime he likely committed the crime charged."].) Moreover, as our Supreme Court has explained, "[a]though the similarity between the prior convictions and the charged offenses is a factor for the court to consider when balancing probative value against prejudice, it is not dispositive." (*Clark*, *supra*, 52 Cal.4th at p. 932.) And any potential for prejudice is "decreased . . . when testimony describing the defendant's uncharged acts is no stronger or more inflammatory than the testimony concerning the charged offense." (*People v. Tran* (2011) 51 Cal.4th 1040, 1047.) Certainly, Lubkin's brief testimony regarding his Suboxone sales was less inflammatory than the testimony concerning his shooting and killing Garcia.

Fourth, the trial court's decision to allow the prosecutor to question Lubkin about his sales of Suboxone had no adverse impact on Lubkin's right

to testify "because defendant actually took the stand and suffered impeachment with" the prior conduct. (*Mendoza, supra,* 78 Cal.App.4th at p. 926.) Lubkin asserts that while he did testify, the trial court's ruling, "mere moments before Lubkin was set to take the stand," left him with no time to adequately consider whether to continue testifying or to "back out" and allow "the jury to draw negative inferences against him." But ultimately, Lubkin did testify, and therefore this factor weighs in favor of the court's ruling.

In sum, we conclude that the probative value of the evidence that Lubkin sold Suboxone was not substantially outweighed by the probability that its admission would create substantial danger of undue prejudice, confusing the issues, or misleading the jury. Therefore, the trial court did not abuse its discretion by allowing the challenged impeachment evidence.

## D. Cumulative Error

Finally, Lubkin argues the cumulative effect of the alleged errors deprived him of his right to a fair trial, requiring reversal of the judgment. "Cumulative error is present when the combined effect of the trial court's errors is prejudicial or harmful to the defendant." (*People v. Capers* (2019) 7 Cal.5th 989, 1017.) We concluded the trial court did not err in allowing the prosecution to admit evidence of Lubkin's past drug sales. We also concluded Lubkin forfeited his claims of prosecutorial misconduct. To the extent we addressed Lubkin's claims of ineffective assistance of counsel, we concluded that he failed to establish that any alleged deficient representation was prejudicial. (See *People v. Smithey* (1999) 20 Cal.4th 936, 1017 [defendant's claim based on cumulative effect of ineffective assistance of counsel failed because "in each instance either counsel's performance was not deficient,

18

because there was no error, or defendant has failed to establish that he was prejudiced by any deficiency"].)  Accordingly, reversal is not warranted.

## III.  DISPOSITION

The judgment is affirmed.


_____
LANGHORNE WILSON, J.


WE CONCUR:


_____
BANKE, Acting P. J.


_____
SMILEY, J.


*People v. Lubkin / A170114*